No. 22039.

FRANCIS JOHN LABLANC *v*. THE PEOPLE OF THE STATE OF COLORADO.

(418 P.2d 888)

Decided October 10, 1966. Opinion modified and as modified petition for rehearing denied October 24, 1966.

John J. Gaudio, for plaintiff in error.

Duke W. Dunbar, Attorney General, Frank E. Hickey, Deputy, Robert C. Miller, Assistant, for defendant in error.

*En Banc.*

Mr. Justice Moore delivered the opinion of the court.

Plaintiff in error, hereinafter referred to as the defendant, was accused in separate counts of the crime of burglary, rape, and assault to rape. The jury returned verdicts of guilty as to burglary and rape. He was sentenced to the state penitentiary to serve from three to six years on the burglary charge and sixty to seventy years on the rape charge, the sentences to run consecutively.

As grounds for reversal of the judgment entered by the trial court, counsel for the defendant summarizes his written brief under five captions. Upon oral argument only two of these points were seriously argued, namely:

"(1) The court erred in requiring defendant to put on clothing and exhibit himself.

"(2) The court erred in allowing Detective P. E. Shively to testify as to statements made by defendant." The other "points" contained in the Summary of Argument are (3) The trial court erred in refusing to grant continuance; (4) "The court erred in overruling defendant's objections"; and (5) The claim that the verdicts are "contrary to the law and the evidence." These

"points" and the printed argument submitted to support them, are without merit.

We address ourselves to the pertinent facts which give rise to the points relied on by counsel for the defendant in the oral argument.

The prosecuting witness testified that in the early morning hours of April 12, 1964, while she was asleep in her apartment, the defendant broke into her bedroom and forcibly raped her. During all the time he was in her apartment he wore a dark sweatshirt with a hood, cotton gloves, and blue jeans. He was identified by the victim of the assault at a police lineup following his arrest about two months after the crime was committed. He was again identified by her at the trial.

Shortly after midnight on June 14, 1964, the defendant was arrested by a police officer. He was wearing cotton gloves in all respects similar to those described by the rape victim. Under a blanket in the back seat of the car he was driving was a dark sweatshirt with a hood. This garment was introduced in evidence as Exhibit A after the prosecuting witness had testified that it was just like the one worn by her assailant. Upon request of the district attorney the defendant was required to put on the sweatshirt and stand so the jury might observe him. Defendant's attorney objected on the ground that placing the garment on the defendant and requiring him to exhibit himself "served no evidentiary purpose" since he had already been identified.

■ We hold that no error was committed by the trial court in requiring the defendant to put on the sweatshirt with hood attached. It gave the jury an opportunity to see him as the victim saw him, and had a bearing on the accuracy of his identification. Similar procedure was upheld by this court in *Vigil v. People*, 134 Colo. 126, 300 P.2d 545.

Evidence was offered by the district attorney, and admitted over objection of defendant's attorney, to the effect that the victim of the rape came to the police

station for the purpose of looking at persons placed in a "police show-up." She identified the defendant who was one of four men placed in line. Following this identification she asked to speak with Detective Shively and she was accordingly taken by him into a room in which the defendant was seated.

After lengthy hearings outside the presence of the jury, at which time the objections of the attorney to the evidence of conversation between the defendant and the prosecuting witness were overruled, the following testimony was given by the victim of the rape:

"Q. I think the last question asked of you is whether or not you had any conversation with the defendant after you saw him in a police show-up?

"A. Yes.

"Q. Do you recall what was said by the defendant and by you at that time?

"A. Yes. I went in and he was sitting in Detective Shively's office, and I went in there, and Detective Shively asked him if he recognized me.

"And he said, — he didn't look at me for a minute — and then he looked at me — and he said, 'Yes; she looks familiar.'

\* \* \*

"THE WITNESS: And then he said, 'Oh, yes.' He said, 'She is the one whose boy friend drives the white Lincoln,' which we had been in that evening, my friend and I. He had a white Lincoln. \* \* \*"

In the testimony of Detective Shively the following took place:

"Q. How many people were in the show-up?

"A. There were four men in the show-up.

"Q. And was the defendant one of those parties?

"A. He was.

"Q. At the conclusion of that, did you have occasion to confront the defendant with the complainant in this case, \* \* \* (the victim)?

"A. I did.

"Q. And where did this confrontation take place?

"A. It took place in my office in the Detective Bureau at police headquarters.

"Q. At that time were any statements made by this defendant regarding this incident?

"MR. NORBONT: I object, your Honor.

\* \* \*

"Q. What was said by the defendant at that time?

"A. When I first entered the room with \* \* \* (the victim), the defendant was seated in a chair where I had placed him prior to coming into the office. \* \* \* (the victim) sat down, and I asked the defendant if he recognized her. He looked at her for a length of time, and he stated, 'She looks familiar.'

"MR. NORBONT: Just a moment.

"What 'he looked' is not responsive to the question. He said, 'What statement did he make?' If he wants to be responsive, I ask that the other part, 'He looked at her a length of time,' be stricken.

"THE COURT: Objection overruled. He is merely reiterating, Mr. Norbont, what actually took place in that room.

"Proceed, please.

"Q. Will you please continue.

"A. Further, in conversation, he then stated, 'Oh, yes; she is the secretary. Her boy friend drives a white Lincoln.'

"I asked him further, then if he drank from a cup of coffee while in her apartment. In response to this, he stated that there was a cup of coffee on the table, but that he didn't remember drinking from it.

"\* \* \* (the victim) then asked him why he —

"MR. NORBONT: Object to what \* \* \* (the victim) asked him. It is strictly hearsay.

"THE COURT: It isn't hearsay in the presence of this defendant —

"MR. NORBONT: Is that established? That he is right there at this particular time?

"THE COURT: If you will pay attention, Mr. Norbont. It is established.

"There was just * * * (the victim), this defendant, and this detective.

"Proceed, please.

"THE WITNESS: * * * (the victim) asked him, then, if he had ever figured out why he did this.

"His answer to her was the (sic) he guessed he was sick; that people like him should be in the hospital.

"This concluded the conversation, and at that time, I took * * * (the victim) from the room. She became a little upset."

It is argued by counsel for the defendant that admission of the foregoing testimony was reversible error. *Escobedo v. Illinois,* 378 U.S. 478, 84 S. Ct. 1758, 12 L. Ed.2d 977, is relied on as authority for the point urged.

■■ We think it sufficient to say that the facts involved in the instant case and those presented in Escobedo are clearly distinguishable. In the main, the statements made by the defendant in the case at bar were not made in a process of interrogation that lends itself to eliciting incriminating statements. *Maes v. People,* 160 Colo. 528, 418 P.2d 891. The statements of defendant to which objection was made were the spontaneous comments of the defendant in response to questions asked of him by the victim of his crime. His guilt was overwhelmingly established by competent evidence.

The judgment is affirmed.

MR. JUSTICE FRANTZ not participating.