No. 44,993

STATE OF KANSAS, *Appellee,* v. JOHN C. LITTLE, *Appellant.*

(439 P. 2d 387)

Opinion filed April 6, 1968.

*Jack W. Shultz,* of Dodge City, argued the cause, and *Donald E. Shultz,* of Dodge City, was with him on the brief for the appellant.

*Gerald C. Golden,* county attorney, argued the cause, and *Robert C. Londerholm,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

O'CONNOR, J.: This appeal is a companion case to *State v. Joseph Little,* 200 Kan. 101, 439 P. 2d 383. The defendant (appellant) herein, John C. Little, was convicted by a jury on two counts of second degree forgery—uttering (K. S. A. 21-609) and possession of forged instruments (K. S. A. 21-610). Following conviction, denial of a motion for new trial and imposition of sentence under the

habitual criminal act (K. S. A. 21-107a), the defendant, through his present court-appointed counsel, has appealed.

The facts giving rise to the charges of which defendant was convicted are as follows:

On May 13, 1966, at Cooper's Gift Shop in Meade, the defendant purchased a $61.75 watch for which he presented a $95 check in payment. He endorsed the check in the presence of the clerk who, after obtaining Mrs. Cooper's authorization, cashed it and gave defendant $33.25 in change. The check was purportedly drawn by Charles Breeding on the Plains State Bank, Plains, Kansas, for labor. Later in the day the undersheriff of Meade county, Arlie Johnston, while conducting an investigation of like checks being passed in Meade, apprehended the defendant and his brother Joseph in Joseph's automobile a mile west of Sublette in Haskell county. The officer had already obtained a warrant for Joseph's arrest. Found in the glove compartment of the car at the time was a book of checks, each for the sum of $95, drawn on the Plains State Bank, payable to "John Miller" for labor, and purportedly signed by Charles Breeding. Johnston returned the brothers to Meade and took the defendant to Cooper's Gift Shop to be identified. Mrs. Cooper asked the defendant whether or not he was the man who had given her the $95 check in payment of the watch, and he replied, "Yes, ma'am, I am." The undersheriff then returned the defendant to jail, where a search of the brothers was conducted. The search disclosed approximately $195 in cash, and five checks, each for $95, made out to "John Miller" for labor, and signed by Charles Breeding. Thereafter, a warrant was obtained for defendant's arrest, and he was placed in jail.

The evidence at trial was that the defendant had worked for Charles Breeding for approximately two weeks in April 1966, and that Mr. Breeding had paid him with two separate checks drawn on the First State Bank of Elkhart—one in the amount of $76.80 and the other for $46.50. Mr. Breeding had never given the defendant any other checks, nor was he acquainted with a "John Miller." He, along with the vice president of the Plains State Bank, testified that none of the checks introduced in evidence bore Mr. Breeding's true signature.

Many of the points raised by the defendant here were advanced and disposed of in the separate appeal of defendant's brother (*State v. Joseph Little*, supra) and will be mentioned only briefly in this

opinion. We will first direct our attention to those points not raised in the brother's case.

Defendant predicates error on the trial court's admitting into evidence, over objection, Exhibits 2 through 6—the five checks obtained in the search of defendant and his brother at the jail. Although the undersheriff could not identify specifically which checks were found on the defendant and which on his brother, he testified one or more were found on the defendant. Defendant's theory is that the checks were obtained by an unlawful search because the officer was without probable cause to arrest him in Haskell county, and therefore the search in which the checks were found was not incident to a lawful arrest.

While it is true that an arrest otherwise unlawful is not made lawful by what the subsequent search discloses, a search without a warrant is, within limits, constitutionally permissible if incident to a lawful arrest. An arrest without a warrant to support an incidental search must be made with probable cause. Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that a felony has been or is being committed by the person to be arrested. (*State v. Hart,* 200 Kan. 153, 434 P. 2d 999; *State v. Brown,* 198 Kan. 473, 426 P. 2d 129; *State v. Hunt,* 198 Kan. 222, 424 P. 2d 571; *State v. Blood,* 190 Kan. 812, 378 P. 2d 548; *State v. Wood,* 190 Kan. 778, 378 P. 2d 536; 5 Am. Jur. 2d, Arrest § 25; 6 C. J. S., Arrest § 6b.)

Accepting as true defendant's argument that his arrest took place in Haskell county, rather than after his identification at the gift shop, we are of the opinion the officer had probable cause to make the arrest, and thus the search was incident to a lawful arrest. The officer had received information about the passing of similar forged checks by separate individuals when he set out on his investigation. Although armed with a warrant for only Joseph's arrest, the officer testified the description of the person given to him by the shopkeeper did not fit Joseph. Upon the apprehension of the brothers in the automobile and the discovery of the book of checks in the glove compartment, which checks were substantially the same as the one passed at the gift shop, the officer had probable cause to believe the defendant had committed a felony—the uttering of a forged instrument. The arrest being lawful, the officer not only had the right, but also the duty, as an incident to the arrest, to search the defendant's person and seize any incriminating articles connected with the crime. (*State v. Jerrel,* 200 Kan. 415, 436 P. 2d

973; *Agnello v. United States,* 269 U. S. 20, 70 L. Ed. 145, 46 S. Ct. 4, 51 A. L. R. 409; *Weeks v. United States,* 232 U. S. 383, 58 L. Ed. 652, 34 S. Ct. 341; 47 Am. Jur., Searches and Seizures § 19; 6 C. J. S., Arrest § 18.) We hold Exhibits 2 through 6 were not illegally seized, and were properly admitted into evidence.

Defendant next contends his oral statement to Mrs. Cooper, that he was the man who gave her the check, was erroneously admitted into evidence. The gist of defendant's argument is that the incriminating admission stems from custodial interrogation prior to his being informed of his rights, and, therefore, was inadmissible under *Miranda v. Arizona,* 384 U. S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, where it was said:

". . . the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. . . ." (p. 444.)

It is undisputed that none of the *Miranda* warnings had been given the defendant prior to his admission. Conceding that the defendant was in custody, or at least deprived of his freedom in a significant way when the admission was made, we are of the opinion the admission was not the product of questioning initiated by law enforcement officers. The undersheriff had brought the defendant to Mrs. Cooper to be identified. Mrs. Cooper's inquiry of the defendant was entirely spontaneous. Defendant's reply was equally spontaneous and voluntary, and was not in response to any question directed to him by the officer. In fact, the admission was wholly unsolicited as far as the officer was concerned.

The *Miranda* decision applies to both confessions and admissions. The court emphasized:

"The principles announced today deal with the protection which must be given to the privilege against self-incrimination when the individual is first subjected to police interrogation while in custody at the station or otherwise deprived of his freedom of action in any significant way. . . .

"In dealing with statements obtained through interrogation, we do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is

allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. *Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.*" (Emphasis added.) (pp. 477, 478.)

The aim of *Miranda* was against the "potentiality for compulsion" [p. 457 (L. Ed. 2d 713; S. Ct. 1618)] found in custodial interrogation initiated by police officers. Hence, the guidelines announced therein do not apply when admissions by the accused are made to persons other than law enforcement officers or their agents. (See, *People v. Clark*, 60 Cal. Rptr. 524, _____ P. 2d _____; *Schaumberg v. State*, _____ Nev. _____, 432 P. 2d 500.) Even under *Escobedo v. Illinois*, 378 U. S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758, which was directed against a situation where the police carried out a "process of interrogation that lends itself to eliciting incriminating statements" [p. 491 (L. Ed. 2d 986; S. Ct. 1765)], volunteered statements obtained without any "process of interrogation" on the part of the officers are admissible. (See, *La Blanc v. People*, 160 Colo. 575, 418 P. 2d 888, cert. denied 388 U. S. 922, 18 L. Ed. 2d 1371, 87 S. Ct. 2125; *Maes v. People*, 160 Colo. 528, 418 P. 2d 891.) In *La Blanc*, a rape victim, in the presence of police officers at the station, asked the accused why he had done it. The accused's reply was held admissible on the basis his statements were merely spontaneous comments in response to the victim's question and were not made pursuant to a process of interrogation that lent itself to eliciting incriminating statements.

Other points of error raised by the defendant have been covered in *State v. Joseph Little*, supra. Defendant, as did his brother, contends proper venue on the possession charge (Count II) was never established to be in Meade county. The allegations contained in Count II of the information were general in nature and referred to "check or checks." Disregarding the question of whether or not the uttered check to the gift shop which formed the basis for Count I could also be the basis for conviction on Count II, we believe the conviction on Count II is sustainable on the circumstantial evidence that defendant had possession in Meade county of the book of checks as well as one or more of those later found on his person. Joint possession of the book of checks found in the glove compartment of Joseph's automobile in which the defendant was a passenger

could be reasonably inferred. The brothers had departed Meade county immediately after passing several forged checks similar to those contained in the book and proceeded by automobile to Haskell county, where they were apprehended. Under the same rationale applicable to possession of burglary tools (K. S. A. 21-2437), possession of forged instruments, in violation of K. S. A. 21-610, may be joint as well as individual, and two or more persons may have the power of control over the forged instruments, and intend to control and use them jointly, so that all become criminally liable. (See, *State v. Jerrel*, supra; *State v. Hart*, supra.) For the reasons stated herein, and also in *State v. Joseph Little*, supra, the facts were sufficient for the jury to reasonably infer the book of checks, or one or more of the checks found in the search of defendant's person, had been in his possession in Meade county.

It also appears that defendant makes some complaint that the book of checks and the five checks taken in the search of him and his brother were inadmissible because there was no evidence connecting the checks with the defendant. We have already emphasized the checks were similar to the one passed by the defendant at the gift shop. The testimony of Mr. Breeding and the bank official established they were all forged instruments. The checks tended to explain the entire nefarious scheme of the brothers. Not only were they relevant to prove the possession charge, they were also relevant to prove plan, motive, intent, and *scienter* in respect to the uttering offense. (*State v. Joseph Little*, supra.)

Defendant further challenges his conviction on Count I (uttering) on the ground that secondary evidence of the contents of the check was introduced without proper foundation. Apparently, as in the brother's case, the check itself had been lost or misplaced. The undersheriff and clerk in the gift shop testified in detail, without objection, about the contents of the check. There was some discrepancy in their testimony as to whether the drawee of the check was "John Miller" or "John Little," but that is not important in view of the substantial evidence that the check was in fact a forgery. There being no contemporaneous objection to the secondary evidence, the defendant is not now in a position to complain. (*State v. Joseph Little*, supra.)

Defendant also specifies as error the giving of certain instructions by the trial court. The record discloses no objection was interposed to the instructions at the time of trial, nor were they urged as grounds

in the motion for new trial. Therefore, the matter is not entitled to appellate review. (*State v. Patterson,* 200 Kan. 176, 434 P. 2d 808, and cases cited therein.)

Similar to the contention of his brother, the defendant also urges he was prejudiced and denied effective assistance of counsel because Mr. Grover Bryan was appointed to represent both of them in their separate trials. The point was considered in *State v. Joseph Little,* supra, and for the reasons set forth therein, the contention is completely unmeritorious.

What has already been said disposes of the specifications of error pertaining to the trial court's rulings on defendant's motion to discharge and motion for new trial.

The judgment is affirmed.