Billy C. BROWN, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–86–566.

Court of Criminal Appeals of Oklahoma.

Sept. 19, 1988.

Johnie O'Neal, Public Defender, Tulsa, for appellant.

Robert H. Henry, Atty. Gen., Sandra D. Howard, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

Appellant, Billy C. Brown, was tried by jury and convicted of Unauthorized Use of a Motor Vehicle, After Former Conviction of a Felony (47 O.S.1981, § 4–102 and 21 O.S.1981, § 51) in Tulsa County District Court, Case No. CRF–85–3467, before the Honorable Jay Dalton, District Judge. The jury set punishment at twenty (20) years imprisonment, and judgment and sentence was imposed accordingly. From this, appellant perfected this appeal.

On September 4, 1985, Fran Darby left her white 1979 Mercury Capri parked in a local restaurant parking lot. She locked her purse and an extra set of car keys in the vehicle. The next morning, she returned to pick up her car, but discovered it was missing.

Three days later, Michelle Butler saw a white 1979 Mercury Capri hit her grandmother's truck. The driver of the vehicle ran from the scene of the accident, but was chased by several onlookers who caught him and brought him back to the accident scene. The passenger in the vehicle, Sharisa Crowles, jumped from the car but did not flee, apparently because of her injuries. Butler positively identified appellant as the driver of the vehicle.

After some investigation, the vehicle was identified as the one stolen from Fran Darby. A purse and a billfold containing checks and credit cards were found in the car, and were identified by Darby as belonging to her. The car had not been hotwired; keys were found in the ignition. The license tag present on the vehicle was not that registered in Darby's name, but instead was registered to a Shirley Tiger, an aunt of Sharisa Crowles.

The defense called two witnesses, who testified that appellant had borrowed the car from Willie Golden, a known car thief. One of the defense witnesses, Sharisa Crowles, testified that when the accident

occurred, appellant told her to jump from the car "because it might blow." Facts not included in this brief summary will be discussed as they become relevant.

■ In his first proposition, appellant claims that the verdict is contrary to law and the evidence is insufficient to support the verdict. The test used when determining the sufficiency of the evidence was set forth in *Spuehler v. State*, 709 P.2d 202, 203 (Okla.Crim.App.1985):

Whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

The statute under which appellant was convicted, 47 O.S.1981, § 4–102 requires the State to prove that appellant was using or driving a vehicle without the consent of the owner, with the intent to deprive the owner, temporarily or otherwise, of the vehicle or its possession. *Fox v. State*, 686 P.2d 292, 293 (Okla.Crim.App.1984). Thus, if the jury could have found each of these elements beyond a reasonable doubt, the verdict will not be disturbed by this Court.

Witness Butler testified that appellant was driving the car when the accident occurred and that he then fled from the scene. The owner of the vehicle testified that she had not given appellant permission to drive her car. As to the element of intent, there was sufficient circumstantial evidence to show that appellant knew the car to be stolen and intended on depriving the owner of possession of the car. The license tag had been switched to that of one of appellant's girlfriend's relatives. Appellant's girlfriend testified that she saw a purse in the backseat of the car, but did not question appellant as to its owner. There was also evidence that appellant and his girlfriend had gone to Sapulpa on the day of the accident. The tag on the car at the time of the accident was registered to a resident of Sapulpa. These facts were sufficient to support the jury's finding of guilt.

■ Also in his first proposition, appellant argues that it was error for evidence

regarding Willie Golden's reputation as a car thief to be admitted into evidence. He urges that the State failed to lay the proper foundation of showing that witness Mack was sufficiently acquainted with Golden to know of his reputation. We disagree. The record shows that Mack was a resident of the community and had known Golden for over two (2) years. Thus, this assignment is without merit.

■ Appellant also complains of evidence which was introduced to impeach the credibility of defense witness Crowles. Crowles, on direct examination, testified that she went to Sapulpa on the day of the accident but did not remember who took her. She also stated that she did not know how her aunt's car tag got on the stolen vehicle. On cross-examination, she denied telling Officer Vickers that appellant drove her to Sapulpa. In rebuttal, the State called Officer Vickers, who testified as to a conversation he had with Crowles. His testimony was that Crowles stated that appellant picked her up on the day of the accident and asked her if she wanted a ride in his new car. He also said that the tag was registered in the name of Shirley Tiger, the aunt of Crowles, who lived in Sapulpa. ₊

Appellant claims it was error to introduce this evidence because it was hearsay and was impeachment on a collateral matter. Again, we disagree. Officer Vicker's testimony did not fall within the definition of hearsay as defined by 12 O.S.1981, § 2801(3) insofar as it was not "offered in evidence to prove the truth of the matter asserted...." Rather, it was offered to point out the inconsistencies in the statements made by Crowles. Neither was it impeachment on a collateral issue. The evidence went directly to show appellant's intent. See Pickens v. State, 600 P.2d 356, 361 (Okla.Crim.App.1979). This assignment is without merit.

■ As his next proposition of error, appellant claims that the trial court erred by refusing to give his requested instruction regarding his theory of the case. Defense counsel submitted an instruction which stated that appellant borrowed the car from Golden and "Mr. Brown further believed that Golden had lawful possession of the car." Clearly, the instruction emphasized certain evidence and made factual determinations which were favorable to appellant's case. As we stated in *Davie v. State*, 414 P.2d 1000, 1004 (Okla.Crim.App. 1966), quoting *Wingfield v. State*, 89 Okl.Cr. 45, 205 P.2d 320 (1949):

> It is not error for the trial court to refuse a requested instruction of the defendant which emphasizes certain evidence of the defendant so as to constitute comment upon the weight of the evidence.

More recently, in *Eby v. State*, 702 P.2d 1047, 1050 (Okla.Crim.App.1985), this Court held that the "trial court is not required to ... give instructions in [the] language offered by the litigants...." In *Eby*, the defendant complained of two instructions that the trial court refused to give. This Court reasoned that because the jury was properly instructed to find the defendant guilty only if the State proved all the elements beyond a reasonable doubt, the defendant was not prejudiced by the trial court's refusal to give his requested instructions. Similarly, the instructions given by the trial court correctly stated the necessary elements of the crime with which appellant was charged and the State's burden of proof. The jury was instructed that they must find each element of the crime beyond a reasonable doubt. Accordingly, we find no error in the trial court's refusal to give appellant's requested instruction.

■ In appellant's last proposition of error, he alleges that the trial court erred by allowing the State to exclude, by the use of a peremptory challenge, the only minority member on the jury panel. During voir dire, juror Robinson was excused by the State. Defense counsel approached the bench and asked that the prosecutor be required to state his reason for excusing Robinson. The trial judge stated that he knew of no authority which required a prosecutor to state his reasons for the exercise of a peremptory challenge. Defense counsel pointed out that Robinson was of the same racial minority as appellant. The prosecutor refused to state his reason.

Prior to the writing of the opinion in appellant's case, this Court remanded this cause to the district court for an evidentiary hearing to determine the prosecutor's purpose in exercising a peremptory challenge on juror Robinson. The district court held a hearing and determined that "Prosecutor Jim Brandon did not systematically exclude veniremen based on racial identity with Appellant," and that "Venireman, Phillip Robinson, was excused for neutral reasons ..." Both sides have filed supplemental briefs regarding this issue.

*Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), forbids a prosecutor from challenging potential jurors solely on account of their race or on the assumption that black jurors will be sympathetic to a black defendant. The Equal Protection Clause of the Federal Constitution does not allow a peremptory challenge to be used as an instrument of discrimination. While this writer disagrees with the abrogation of the peremptory challenge, the principles enunciated in *Batson* are binding on this Court.

To establish a prima facie case of discrimination, the defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. *Batson,* 476 U.S. at 100, 106 S.Ct. at 1723. Second, the defendant is entitled to rely on the fact that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." *Id.,* citing *Avery v. Georgia,* 345 U.S. 559, 562, 73 S.Ct. 891, 892, 97 L.Ed.2d 1244 (1953). Finally he must show that these facts and any other relevant circumstances raise an inference that the prosecutor used his peremptory challenges to exclude possible jurors on account of their race. *Id.*

The record reveals that appellant was a black man, as was juror Robinson. As to the second prong, appellant is entitled to rely on that fact that peremptory challenges are easy avenues for discrimination. Looking to the third prong, we note that the prosecutor excluded the only black ve-

nireman. A review of the voir dire transcript reveals no blatant statement by Robinson which would be sufficient for an excusal for cause. Further, when asked to state his reason for excusing Robinson, the prosecutor refused. We believe appellant made a prima facie showing of discrimination.

At this point, the burden shifts to the prosecutor "to come forward with a neutral explanation for challenging black jurors." *Id.* at 100, 106 S.Ct. at 1723. The prosecutor's explanation need not rise to the level of justifying a challenge for cause. In the present case, the prosecutor stated, at the evidentiary hearing, several neutral, objective reasons for dismissing juror Robinson. Based on those reasons, he chose to exercise a peremptory challenge to excuse juror Robinson.

We believe that the prosecutor met the standard of *Batson,* and enunciated a racially-neutral reason for dismissing juror Robinson. Accordingly, this assignment of error is without merit.

For the foregoing reasons, the judgment and sentence is AFFIRMED.

BRETT, P.J., and BUSSEY, J., concur.