COMMONWEALTH *vs.* STACEY HARRIS.

Middlesex. December 6, 1990. - March 6, 1991.

Present: LIACOS, C.J., ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Homicide. Jury and Jurors. Practice, Criminal,* Challenge to jurors, Judicial discretion, Fair trial. *Evidence,* State of mind, Cumulative evidence.

Discussion of bases on which a party can make a prima facie showing of improper use of peremptory challenges to exclude prospective jurors in a criminal case. [464-465]

This court held that, in contesting the use of a single peremptory challenge of a prospective juror at a criminal trial, a party may make a prima facie showing rebutting the presumption that the challenge was properly used simply by demonstrating that the party is a member of a constitutionally protected, discrete community group, and that the only prospective juror of the same group has been peremptorily challenged. [466]

At a criminal trial, the judge improperly allowed the Commonwealth a peremptory challenge of the only black juror on the venire, where the defendant was black and where the Commonwealth did not justify the challenge with a persuasive neutral reason unrelated to the defendant's race. [466-468] NOLAN, J., dissenting.

At the retrial of a murder indictment it would be proper to call the victim's father as a witness unless new reasons are advanced to persuade the judge that the father was called to generate sympathy among the jurors. [468-469]

At the retrial of a criminal case, a certain hearsay statement, although having some relevance with respect to the victim's state of mind, would be unfairly prejudicial and, in any event, cumulative of other evidence and ought not to be admitted. [469]

The court expressed its concerns and suggestions with respect to the role of a victim advocate in the courtroom during a criminal trial. [469-471]

INDICTMENT found and returned in the Superior Court Department on March 12, 1987.

The case was tried before *Paul A. Chernoff*, J., and post-conviction motions were heard by him.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Willie J. Davis* for the defendant.

*Judy G. Zeprun*, Assistant Attorney General, for the Commonwealth.

GREANEY, J. We granted further appellate review to determine whether the prosecutor improperly used a peremptory challenge to exclude the sole black person from the venire from which the trial jury was picked for the defendant's trial. A divided panel of the Appeals Court concluded that the judge did not abuse his discretion in allowing the challenge. See 28 Mass. App. Ct. 724, 728 (1990). We disagree, and conclude that the trial judge should have disallowed the challenge. Accordingly, we reverse the defendant's conviction and order a new trial.

The defendant, a black man, was convicted of murder in the second degree as the result of the stabbing death of a student at a fraternity party at a college in Cambridge. The Appeals Court opinion states the following account of the juror challenge issue which we quote in full.

"During the empanelment of the jury, the prosecutor used one of his peremptory challenges to exclude a black woman. The defendant's counsel objected, pointing out that she was the only black person on the panel. The judge asked the prosecutor for his reasons. The latter responded as follows:

'First of all, Your Honor, I would note that this is not a black on white crime . . . [both the victim and the defendant are black]. She reminds me, frankly, of the defendant's mother who collapsed hysterically at the arraignment and I assume will be here continually through the trial. I'm just afraid that would affect her ability — the resemblance that I find between her and the mother would affect her ability to sit impartially. She is also from Cambridge and there is going to be a young woman I understand is going to testify for the

defense from Cambridge. Even though she says she does not know her, I'm afraid she might tend to believe that woman more who is going to represent a different view of the evidence, I assume a different view of the evidence, than witnesses who are going to be called on behalf of the Commonwealth.

'There is certainly no pattern of challenging jurors because of race. It's the only black on the panel at this point.'

"The defendant objected on the grounds that, despite the prosecutor's disclaimers, the only reason for the challenge was that the woman was black. He said, 'the only resemblance [to the defendant's mother] is that she's black,' and the witness from Cambridge also is black. The only reason 'you think this [juror] might relate to her [is] because [the witness is] black.'

"The judge ruled:

'I'm not going to prevent the challenge. It's not a pattern. I think it's unfortunate that the one black juror isn't — one black potential juror won't end up sitting as a juror on this particular case. I think that's regrettable, but there is not a pattern and the government submits sufficient reason that I don't think that I should bar the peremptory challenge. It should only be done under certain carefully articulated circumstances. As I say, I feel it's unfortunate, but I'm not in a position to block it.'

"On the next day of trial — the jury had not yet been sworn — the prosecutor informed the judge that although the Commonwealth's position was that the peremptory challenge was exercised with appropriate reasons, he would not object to a request that the judge, in his discretion, discharge the jury and begin again simply to avoid any appearance of impropriety. The defendant rejected the offer 'for the simple reason that there is no guarantee that a new panel will produce any blacks, considering the situation in Middlesex

County.' The judge put on the record that he had ruled in the lobby that he would not start a fresh empanelment. While expressing his 'personal regret that . . . the one individual who was black was excluded through a peremptory challenge,' he was 'satisfied' with the Commonwealth's reasons.

> 'One of the reasons was the Commonwealth desired to strike individuals who lived in Cambridge. I carefully monitored the Commonwealth's challenges during the empanelment process, and all but one Cambridge person were in fact challenged by the Commonwealth. For those reasons, as I said, I'm not going to interfere with the process.' " 28 Mass. App. Ct. at 725-727.

With this background in mind, we turn to the defendant's argument that the allowance of the challenge violated rights guaranteed him by both art. 12 of the Massachusetts Declaration of Rights and the equal protection clause of the Fourteenth Amendment to the United States Constitution.

The use of peremptory challenges to exclude prospective jurors solely because of bias presumed to derive from their membership in discrete community groups is prohibited both by art. 12, see *Commonwealth* v. *Soares*, 377 Mass. 461, 486-488, cert. denied, 444 U.S. 881 (1979), and the equal protection clause, see *Batson* v. *Kentucky*, 476 U.S. 79, 84-88 (1986). Under these decisions, once the party contesting a peremptory challenge rebuts the ordinary presumption that the challenge was properly used by making a showing of an improper basis for the challenge, the challenging party must provide, if possible, a neutral explanation establishing that the challenge is unrelated to the prospective juror's group affiliation. See *Commonwealth* v. *Soares, supra* at 491; *Batson* v. *Kentucky, supra* at 97-98. Evidence of a pattern of challenges of members of the same discrete group as the defendant is sufficient to rebut the presumption of proper use of challenges. See *Commonwealth* v. *Soares, supra* at 473 n.8, 486-488 (involving challenges to twelve black persons in the

venire); *Commonwealth* v. *Hutchinson*, 395 Mass. 568, 571 (1985) (involving challenges to twelve female persons in the venire).

However, a pattern of challenges is not the exclusive basis on which a party can make a prima facie showing of impropriety, because the principles stated in the *Soares* and *Batson* decisions apply as well to the peremptory challenge of a single prospective juror within a protected class. See *Commonwealth* v. *Clark*, 378 Mass. 392, 407 n.17 (1979) (assuming that the peremptory challenge of the lone black member of venire could be improper under *Soares*); *Commonwealth* v. *DiMatteo*, 12 Mass. App. Ct. 547, 553 (1981) ("[T]he dismissal [from the jury venire] of the only member of a [discrete] group is as repugnant to the Declaration of Rights as the dismissal of all but one member of the [same] group"). See, e.g., *Harrison* v. *Ryan*, 909 F.2d 84, 88 (3d Cir. 1990); *United States* v. *Lane*, 866 F.2d 103, 105 (4th Cir. 1989); *United States* v. *David*, 803 F.2d 1567, 1571 (11th Cir. 1986).[1] Relying on this premise, courts of other jurisdictions have held or assumed that the use of a peremptory challenge to remove the only prospective juror who belongs to the same discrete group as the defendant by itself constitutes a prima facie case of impropriety or discrimination in the use of the challenge. See *United States* v. *Horsley*, 864 F.2d 1543, 1544-1546 (11th Cir. 1989); *United States* v. *Cloyd*, 819 F.2d 836, 837-838 (8th Cir. 1987); *United States* v. *Love*, 815 F.2d 53, 54-55 (8th Cir.), cert. denied, 484 U.S. 861 (1987); *Stanley* v. *State*, 313 Md. 50, 84-87 (1988); *Mitchell* v. *State*, 295 Ark. 341, 348-351 (1988); *Pearson* v. *State*, 514 So.2d. 374, 375-376 (Fla. App. 1987); *Saadiq* v. *State*, 387 N.W.2d 315, 326 (Iowa), appeal dismissed, 479 U.S. 878 (1986); *Brown* v. *State*, 762 P.2d 959, 961-962 (Okla. App. 1988); *State* v. *Henderson*, 94 Or. App. 87, 91-92 (1988).[2]

---

[1]The assistant attorney general conceded this point at oral argument.

[2]See also *United States* v. *Roan Eagle*, 867 F.2d 436, 441 (8th Cir.), cert. denied, 490 U.S. 1028 (1989) (noting that party can make prima facie case that challenges were improper by showing that 100% of pro-

In *Commonwealth* v. *Soares, supra,* we identified as a fundamental feature of a fair jury representation of a broad cross-section of the community. See 377 Mass. at 478. This basic characteristic of a fair jury should be maintained, we stated, because it furthered a "key objective," the "assurance of a diffused impartiality" on the part of the jury. *Id.* at 480, quoting *Taylor* v. *Louisiana,* 419 U.S. 522, 530-531 (1975). This objective remains one of critical importance, and is no less pressing when, as in this case, there is only one person in the particular jury venire who belongs to the same discrete community group as the defendant. Indeed, because there is a very real risk in such cases that *all* members of a particular group might be excluded from service, the chances that a final jury of truly diffuse impartiality will be assembled are significantly reduced. To make the objective of diffuse impartiality meaningful when this occurs, we hold that a party contesting the use of a single peremptory challenge can make a prima facie showing rebutting the presumption that the challenge was properly used simply by demonstrating that he is a member of a constitutionally protected, discrete community group, and that the only prospective juror of the same group has been peremptorily challenged.

In this case,[3] the judge allowed the disputed challenge because: (1) there was no pattern of challenges, and (2) he con-

---

spective jurors in party's discrete group were challenged); *United States* v. *Chalan,* 812 F.2d 1302, 1314 (10th Cir. 1987) (same); *Stanley* v. *State, supra* (same).

[3]Although conceding that the defendant properly raised and did not waive the *Soares* issue, the Commonwealth nevertheless argues that, because the defendant did not agree to accept the Commonwealth's offer (made so as to avoid any "appearance of impropriety") of a fresh empanelment, this court should not reach the merits of this issue. This contention is unpersuasive. The judge refused to interfere with the empanelment process because he found the Commonwealth's explanation for the disputed challenge valid, *not* because the defendant was reluctant to re-do empanelment. (Defense counsel rejected the Commonwealth's offer because, in his considerable experience, few black people appeared in Middlesex County jury venires, so he felt that there was no real prospect that there would be any in a second venire.) The defendant's position regarding the Commonwealth's offer was reasonable, and, in the circumstances of

cluded that the Commonwealth's purported reasons for the challenge were sufficient. The judge's reliance on the fact that there was no pattern of challenges of black persons was incorrect as a matter of law. The defendant made a prima facie showing that the challenge was improper by pointing out that the challenged person was the only black person on the venire. The second basis on which the judge allowed the peremptory challenge — the determination that the Commonwealth's reasons for the challenge were sufficient — also will not withstand scrutiny. The Commonwealth advanced four reasons in support of its challenge, which we discuss in turn.

First, the prosecutor claimed to have challenged the black person because "[s]he reminds me . . . of the defendant's mother . . . . I'm afraid that . . . resemblance . . . would affect her ability to sit impartially." At the time of this bench conference, however, the only evident similarity between the two women was their skin color and gender: both were black and women.[4]

Second, the prosecutor contended that his challenge was based on the fact that the person was from Cambridge, and that he was concerned that she would find more believable a defense witness (also black) from Cambridge. If this purported basis for the challenge was more than a pretext, however, the prosecutor should have used one of his remaining peremptory challenges to remove a white male, also a Cambridge resident, whom he allowed to remain on the jury.

Third, the prosecutor noted that the defendant's mother became hysterical at the arraignment. This point was irrelevant. There was no reason to think that the black woman in the venire would not be able to sit and judge the evidence

---

this case, we conclude that the rejection of the remedy should not foreclose decision of the merits.

[4] We will not assume that the prosecutor was referring to age or some other neutral linkage between the two women when he used the term "resemblance." If the prosecutor had in mind some other articulable similarity between the two women that might affect the prospective juror's ability to be impartial, he should have brought it to the judge's attention.

impartially simply because there was evidence that the defendant's mother was highly emotional at a preliminary stage of the proceedings.

Fourth, and finally, the prosecutor pointed out that both the defendant and the victim were black. This fact is not irrelevant to analysis of a *Soares* issue. Nevertheless, it does not detract from the defendant's right to be protected from the Commonwealth's improper use of peremptory challenges, see *Commonwealth* v. *Little*, 384 Mass. 262, 265 (1981) and, by itself, does not justify the challenge. Thus, the prosecutor's peremptory challenge, suffused as it was with racial and gender-based overtones, plainly was not for neutral reasons unrelated to the prospective juror's group membership. The judge should have disallowed the challenge and, unless a challenge for cause could be made, ordered the person seated. See *id.* at 264.

As the Appeals Court correctly recognized, trial judges possess broad discretion to decide questions regarding the use of peremptory challenges. That discretion, however, is not unlimited, and courts have not hesitated to reverse convictions based in part on an improper jury-selection process. See, e.g., *Harrison* v. *Ryan, supra*; *United States* v. *Chinchilla*, 874 F.2d 695 (9th Cir. 1989); *United States* v. *Horsley, supra*; *United States* v. *Gordon*, 817 F.2d 1538 (11th Cir. 1987); *Gamble* v. *State*, 257 Ga. 325 (1987). The defendant made a prima facie showing that the Commonwealth's challenge of the sole black person was improper. The Commonwealth subsequently failed to justify the challenge with a persuasive neutral reason unrelated to the defendant's group membership. The defendant's conviction was obtained in violation of constitutional guarantees, and must be reversed. See *Commonwealth* v. *Soares, supra* at 492-493; *Batson* v. *Kentucky, supra* at 100.

We discuss the issues likely to occur at retrial.

(a) *Victim's father as witness.* The defendant contended that it was improper for the prosecutor to have called the victim's father as a witness. We agree with the Appeals Court that no "calculated impropriety" has been shown in

the use of the witness, and that the witness may be called at retrial unless new reasons are advanced to persuade the trial judge that the prosecutor is purposely calling the witness to attract sympathy.

(b) *Hearsay statement.* Shortly before the confrontation during which the victim was stabbed, a woman who knew the defendant, and was in attendance at the party, told the victim that some people at the party were getting ready to fight. The woman then warned the victim not to go outside because "they might be carrying [knives]." The woman testified to this conversation at trial over the defendant's objection. The defendant argues that this testimony was the functional equivalent of improper character evidence because the witness had not seen a knife, but only inferred that the defendant had one because she knew him. Therefore, the defendant argues, the testimony suggested to the jury that the defendant was known to carry a knife.

While we agree with the Appeals Court that the evidence had some relevance because it related to the victim's state of mind (which was material because the defendant's case essentially was that the victim was the aggressor), there is active danger that a jury could misuse the evidence. As the Appeals Court noted, there was other evidence apart from this testimony that the victim could have known that the defendant was armed with a knife. The statement thus tends unfairly to prejudice the defendant and at the same time is cumulative of other evidence. It should not be admitted on retrial.

(c) *Presence of the victim advocate.* A victim advocate sat with the victim's mother in the courtroom during the trial. Near the beginning of the trial, defense counsel observed the advocate holding the mother's hand, and objected. This handholding apparently occurred at other times during the course of the trial. Defense counsel renewed his objection at the end of the trial and also referred to the conduct in his motion for a new trial. The trial judge found the handholding "unfortunate and avoidable," but not enough to require a new trial.

Comments about the role of victim advocates in the court-room are in order. The victim advocates serve an important and salutary function. They provide victims, witnesses, and family members needed assistance, information, and support, and generally help them to cope with the realities of the criminal justice system and the disruption of personal affairs attending a criminal prosecution during a time of personal trauma. See G. L. c. 258B, §§ 3, 5 (1988 ed.).

At the same time, however, the work of the victim advocate cannot be allowed to impair a defendant's constitutional rights to a fair trial. The danger of unfair prejudice to a defendant's case because of a perception by a jury that an agent of the district attorney is manifestly sympathetic to the victim or a family member is apparent. Such a situation can be analogized to an endorsement by the Commonwealth of the credibility of the victim or family member and, by extension, of any testimony that they might be called to give. The situation may also amount to a subtle (but nonetheless dramatic) appeal to the emotions of the jury that is unrelated to the hard factual questions presented by the trial.

For these reasons, the judge should pay particular attention to the behavior and demeanor of a victim advocate at any time when the jury is present. Visible displays of consolation, support, or sympathy (for example: crying, handholding, and hugging) should not be permitted. If potentially prejudicial conduct does occur, remedial action should be taken sua sponte. At the discretion of the judge, contemporaneous curative instructions should be employed. A supplemental jury instruction at the close of the evidence may also be appropriate. Other measures may also be necessary depending on the circumstances of a given case.

Beyond these general admonitions and suggestions, we leave it to trial judges to draw on their experience and wisdom to respond to these issues on a case-by-case basis. Our paramount concern is that defendants' fair trial rights remain uncompromised by extraneous influences and that unnecessary issues not be created for argument on appeal. So long as these goals are met, and consistent with the require-

ments of effective courtroom management, victim advocates should not be restrained in their valuable efforts to serve the needs of their clients.

The judgment is reversed, the verdict is set aside, and the case remanded for a new trial.

*So ordered.*

NOLAN, J. (dissenting). I dissent. The trial judge was warranted in rejecting the suggestion that the prosecutor's challenge of the juror was founded on "group membership." The Appeals Court was correct in approving the trial judge's action. There was a sound basis for the judge's conclusion that the prosecutor's challenge was founded on a neutral reason. This court's holding today flies in the face of the trial judge's thoughtful ruling and the well-considered opinion of the Appeals Court. It is regrettable.