The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

Patrick **PORTLEY,** Defendant–Appellant.

No. 90CA0859.

Colorado Court of Appeals,
Div. III.

Dec. 17, 1992.

Rehearing Denied Jan. 28, 1993.

Certiorari Denied Aug. 30, 1993.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John J. Krause, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Patrick J. Mulligan, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge METZGER.

Defendant, Patrick Portley, appeals the judgment of conviction entered on a jury verdict finding him guilty of second degree kidnapping, first degree sexual assault, first degree burglary, first degree aggravated motor vehicle theft, and attempted aggravated robbery. We affirm and remand with directions.

On the evening of November 16, 1988, just after two teenaged employees had finished closing an Aurora sandwich shop, defendant approached them in the parking lot, said, "Don't move, I've got a gun," and forced them back into the building. Defendant first ordered the young man victim to lie face down on the floor and then took the young woman victim to the back of the shop. He commanded her to open the safe, but she was unable to do so because of her fear and nervousness.

Defendant then took her outside to her car, forced her to drive to a vacant field, threatened her with the gun, and then repeatedly sexually assaulted her.

Several days later, defendant was arrested while driving the victim's car. Thereafter, both victims selected the defendant from photographic lineups. Additionally, the young woman victim identified the defendant from a voice lineup.

At trial, before commencement of voir dire, the trial court indicated its desire to seat two alternate jurors. The court determined that alternate No. 1 would sit in chair No. 8 and alternate No. 2 would sit in chair No. 14. Counsel for both sides acquiesced in this procedure.

Each potential juror was randomly given a number, and then, upon challenge, was replaced by the next juror on the numerical list. After all challenges for cause had occurred, the prosecutor exercised his first peremptory challenge to the white juror in chair No. 14, the second alternate position. This automatically moved the lone potential black juror, who had been given the next available juror number, from the venire into that seat. The prosecutor used four other peremptory challenges to remove individuals who were seated in the 12 chairs for non-alternate jurors.

I.

Relying on *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) and its progeny, defendant first contends the trial court erred in refusing to require the prosecutor to justify his allegedly racially discriminatory use of a peremptory challenge during jury selection. Defendant argues that this refusal violated his right to equal protection of the laws. We conclude that a remand for further proceedings is necessary for resolution of this issue.

*Batson* sets forth the controlling standard by which to determine whether a prosecutor has exercised his or her peremptory challenges to exclude potential jurors solely on the basis of race, in violation of the Equal Protection clause of the Fourteenth Amendment.

As relevant here, defendant must show purposeful discrimination in the selection of the petit jury to establish a violation of equal protection. To do this, he is required to make a *prima facie* showing that the totality of relevant facts gives rise to an inference of purposeful discrimination by the prosecutor. The prosecutor must then rebut this inference with a neutral explanation for his or her exercise of peremptory challenges regarding the particular case. Finally, the trial court, considering the totality of circumstances, must determine whether defendant has established purposeful discrimination. *Batson v. Kentucky, supra.*

As relevant here, to establish a *prima facie* case of purposeful discrimination, defendant must show that he is a member of a cognizable racial group and that the prosecution exercised its peremptory challenges to remove members of a cognizable racial group from the venire. *Batson v. Kentucky, supra; see also Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). A *prima facie* showing is made if these facts and other relevant circumstances raise an inference that the prosecutor used his or her peremptory chal-

463

lenges to exclude venirepersons from the petit jury on account of race. *Batson v. Kentucky, supra.*

While the Supreme Court noted its confidence in a trial court's ability to determine the existence of purposeful discrimination, the standard of review here is not whether the trial court abused its discretion in ruling on defendant's objections to the prosecutor's exercise of his peremptory challenge. Rather, the trial court is required to determine whether defendant has established purposeful discrimination, and the relevant initial inquiry is whether the totality of relevant facts give rise to an inference of a discriminatory purpose. *Batson v. Kentucky, supra.*

Before the jury was sworn, the defendant made a timely objection and the following colloquy occurred.

[DEFENSE COUNSEL]: There is one other issue before the court actually swears the jury.

I would object based on the fact that there was only one black person that could have been seated as a juror in the panel.

[The Deputy District Attorney] conducted his strikes in a fashion so that the one specific black female, which was the only black juror, was actually seated in the alternate chair that the court predesignated prior to the jury being seated.

I think that it is clearly a situation where my client is not getting a jury of his peers and I believe it's in violation of *Colorado v. Fields* as well as a United States Supreme Court case *Batson.*

THE COURT: Any response, [Deputy District Attorney]?

[DEPUTY DISTRICT ATTORNEY]: Judge, I don't think counsel stated a ground for any action by the court here, so, no, I would have no response.

THE COURT: It does not appear to the court from the manner in which the jurors were picked at random or moved into their chairs at random that there is such a pattern of challenges that would constitute exclusion of a minority.

She may in fact ultimately be an active deliberating juror or she may be excused, but the court will deny any [sic] the request for any relief because she has been seated in the second alternate chair.

Defense counsel later moved for a mistrial on the same basis; this motion was also denied on the same grounds.

Defendant is black. Therefore, having shown that he is a member of a cognizable racial group, defendant has met the first prong of the *Batson* test.

The determination whether defendant met the second prong of *Batson,* establishing whether the prosecutor exercised his peremptory challenges to remove members of a racial group from the venire, requires a more complicated analysis.

■ The People argue that defendant failed to make out a *prima facie* case for two reasons. First, they contend that, because only one black juror was involved, no "pattern" of discrimination has been shown. We reject this assertion.

The number of jurors involved is not critical to establishing an equal protection claim. *See United States v. David,* 803 F.2d 1567 (11th Cir.1986). As the court explained in *United States v. Chalan,* 812 F.2d 1302, 1314 (10th Cir.1987), in holding that a single peremptory challenge was sufficient to establish the claim:

[Peremptory challenges] ... are subject to abuse in part because normally the Government need not state the reasons for its action. If all of the jurors of defendant's race are excluded from the jury, we believe that there is a substantial risk that the Government excluded the jurors because of their race. Our holding helps to avert that risk by requiring the Government to explain the reasons for its challenges when no members of a defendant's race are left on the jury.

This analysis has been adopted in other opinions dealing with the issue of the effect of peremptory challenges against the sole prospective juror who is a member of a racially cognizable group. *See United States v. Cloyd,* 819 F.2d 836 (8th Cir. 1987); *Brown v. State,* 762 P.2d 959 (10th

Cir.1988); *United States v. Horsley*, 864 F.2d 1543 (11th Cir.1989); *Mitchell v. State*, 295 Ark. 341, 750 S.W.2d 936 (1988); *Pearson v. State*, 514 So.2d 374 (Fla.App. 1987); *Commonwealth v. Harris*, 409 Mass. 461, 567 N.E.2d 899 (1991); *State v. Henderson*, 94 Or.App. 87, 764 P.2d 602 (1988). *See generally* Annotation, *Use of Peremptory Challenge to Exclude From Jury Persons Belonging to a Class or Race*, 79 A.L.R.3d 14 (1977).

■ Therefore, we disagree with the trial court's implicit determination that *Batson* requires challenges to be exercised against more than one prospective juror. Rather, we adopt the rule announced in *United States v. Chalan, supra*, and hold that if no members of a cognizable racial group are left on a jury as a result of the prosecutor's exercise of peremptory challenges, a defendant has met the second prong of the *Batson* test. *See also Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *Edmonson v. Leesville Concrete Co.*, 500 U.S. ——, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991); *Georgia v. McCollum*, 505 U.S. ——, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992).

■ Second, the People assert that defendant has failed to make out a *prima facie* case because the black juror was neither challenged nor excluded. Under the circumstances here, we disagree.

In *People v. Baker*, 558 N.Y.S.2d 44, 45, 163 A.D.2d 188 (A.D. 1 Dept.1990), the prosecutor exercised his peremptory challenges to strike all black potential jurors. This left an all white jury, except for the second alternate, who was black. The court held "the inclusion of one lone black alternate juror does not negate the *prima facie* showing of purposeful discrimination." *Cf. People v. Henderson*, 142 Ill.2d 258, 154 Ill.Dec. 785, 568 N.E.2d 1234 (Ill. 1990).

For purposes of the unique facts here, we adopt this rationale. Because of the jury selection method employed, both counsel and the court knew the exact sequence of replacement jurors for those who were challenged either by use of peremptory challenges or challenges for cause. Thus, at the time the prosecutor here was set to exercise his first peremptory challenge, he knew that the lone black venireperson would replace his first challenged juror. And, although his challenge was to a white person, the effect of that act was to place the black venireperson in the second alternate seat. At best, this minimized, and at worst it eliminated, the possibility of her participation in the deliberations. Indeed, neither of the alternate jurors deliberated.

We conclude that the prosecutor's actions here were sufficient to make out a *prima facie* case. Thus, the trial court should have required him to come forward with a neutral explanation. Since the trial court determined, in essence, that defendant did not make out a *prima facie* case, the prosecutor was not required to formulate a response, as required by *Batson v. Kentucky, supra*.

Accordingly, the cause must be remanded for further proceedings for the prosecutor to meet his burden of coming forward with a neutral explanation of his challenge, and for the trial court to consider that explanation and all the attendant circumstances. *See Batson v. Kentucky, supra*. If, on remand, the trial court determines that the defendant has established purposeful discrimination, it shall vacate defendant's judgment of conviction and conduct a new trial. Conversely, if the trial court determines that defendant has failed to establish purposeful discrimination, his conviction shall stand affirmed, subject only to defendant's right to appeal that ruling.

In light of this disposition, we need not address defendant's contention that the prosecutor's exercise of his peremptory challenges violated his Sixth Amendment right to a fair and impartial jury.

However, in the interest of judicial economy, we do address defendant's remaining contentions of error.

## II.

Defendant asserts that the voice lineup procedure used by the police was so unduly suggestive as to render the young woman

victim's voice identification of him inadmissible. We disagree.

■ Pretrial identification procedures which, given the totality of the circumstances, are so unnecessarily suggestive as to render the identification unreliable, violate due process. *People v. Weller*, 679 P.2d 1077 (Colo.1984).

■ The test for determining whether a particular identification procedure violates a defendant's due process rights is whether, under the totality of the circumstances, the identification was unreliable because the confrontation was unnecessarily and irreparably suggestive. *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1976). Above all, reliability is the linchpin in determining the admissibility of identification evidence. *People v. Holden*, 703 P.2d 603 (Colo.App.1985).

■ The prosecution must establish that the identification is not the product of an impermissibly suggestive procedure, but, rather, is based upon an independent source. *People v. Mattas*, 645 P.2d 254 (Colo.1982). The factors to be considered in determining the reliability of voice identification are: (1) the witness' opportunity to hear the accused at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the prior description of the accused's voice; (4) the level of certainty demonstrated at the identification procedure; and (5) the time between the crime and the confrontation. *People v. Holden, supra.*

■ The trial court found, and the record supports a conclusion that, the voice identification procedure here was not so unnecessarily suggestive as to violate defendant's due process rights.

In regard to the *Holden* criteria, the record reveals the witness had an ample opportunity to hear her assailant. During the robbery, kidnapping, and sexual assault, the assailant rendered numerous instructions to and asked several questions of the victim. Second, the victim told a detective that she thought she could recognize her assailant's voice. Additionally,

she described his voice with reasonable accuracy. Also, after the voice lineup, the victim satisfied the fourth criterion by stating, upon hearing defendant's voice, that she was "85 percent sure" the defendant was her assailant. Finally, we note that the time between the crime and the voice lineup was slightly less than six months.

In its ruling on the motion to suppress, the trial court found that nothing was suggestive about the procedure. Even though the voices of those participating in the lineup were not all identical, the speakers' general speaking styles and the general pitch of the voices were sufficiently similar to obviate undue suggestivity. We have viewed the videotape of the voice lineup procedure and conclude that it amply supports the trial court's findings. Accordingly, since there is evidentiary support for the court's ruling, it is binding on appeal. *See People v. Walker*, 666 P.2d 113 (Colo. 1983).

## III.

Defendant next asserts that the admission of the videotape of the voice identification procedure was improper and infringed on a number of his rights. Again, we disagree.

## A.

Defendant contends that, because the voice lineup videotape was unduly prejudicial, the trial court erred in allowing the jury to view it. We find no error.

■ Defendant failed to object at trial; thus, a plain error analysis applies. Plain error exists only if the error so undermines the fundamental fairness of the trial as to cast serious doubt on the reliability of defendant's conviction. *People v. Wood*, 743 P.2d 422 (Colo.1987).

■ The admissibility of evidence is a matter within the discretion of the trial court, which must weigh its probative value against its potentially inflammatory effect on the jury. *People in Interest of R.G.*, 630 P.2d 89 (Colo.App.1981).

■ The trial court should not exclude proffered evidence as unfairly prejudicial simply because it damages the defendant's case. Rather, for such evidence to be subject to exclusion, it must have an undue tendency to suggest a decision on an improper basis. *People v. District Court,* 785 P.2d 141 (Colo.1990).

■ We reject defendant's assertion that the video, which showed him wearing jail clothing and shackles, unfairly prejudiced him. The videotape does not indicate that defendant is in custody. His orange jail shirt appears to be a sweater pulled over a white T-shirt. And, the shackles are not visible nor do they impair the defendant's ability to walk at a normal stride.

Accordingly, because the videotape lacks an undue tendency to suggest a decision on an improper basis, we conclude that no plain error occurred.

## B.

■ Defendant also contends the admission of the videotape violated his Fifth Amendment right to remain silent. This contention is without merit.

In *People v. District Court,* 187 Colo. 333, 340, 531 P.2d 626, 630 (1975), our supreme court held that: "[T]he defendant's Fifth Amendment privilege to remain silent is not violated when the accused is compelled to appear before a lineup and to repeat within the hearing of a witness words which were uttered in the commission of a crime." This continues to be the law.

## C.

■ Defendant further contends that his Sixth Amendment rights to due process, confrontation, and assistance of counsel were violated by presentation of the videotape. We disagree.

The procedure to be employed in showing a videotape to a jury rests in the sound discretion of the trial court. *People v. Montoya,* 773 P.2d 623 (Colo.App.1989).

Defendant had counsel present at the voice lineup and counsel had the ability to cross-examine both the victims and the investigators during trial. Thus, we conclude that no abuse of discretion occurred. *LaBlanc v. People,* 160 Colo. 575, 418 P.2d 888 (1966).

## IV.

■ Defendant finally argues that the trial court's answer to a jury question was improper and, thus, violated his right to a jury trial on each element of the offense. We disagree.

Appellate counsel agree that a plain error analysis applies because defendant's attorney agreed to the trial court's response to the jury's inquiry. *Cf. People v. Trujillo* (Colo.App. No. 91CA0355, December 17, 1992). Thus, we must determine whether the court's answer "so undermined the fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Wilson v. People,* 743 P.2d 415, 420 (Colo.1987).

■ The trial court has a duty to instruct the jury properly on all matters of law, and failure to do so with respect to the essential elements of the offense constitutes plain error. *People v. Freeman,* 668 P.2d 1371 (Colo.1983). The jury may be given appropriate additional instructions when warranted; however, further instructions should not be given when the submitted instructions adequately answer the question at issue. *Leonardo v. People,* 728 P.2d 1252 (Colo.1986).

■ During deliberations, the jury sent a written question to the court asking, "Can evidence from one count be considered circumstantial evidence for another count?" Additionally, the jury asked: "If we find the defendant guilty of Count Two: Sexual Assault, for example, must the identity of the defendant be proved again in Count Five: 1st Degree Burglary?"

The court conferred by telephone with both counsel, who agreed that the response should be that the answer to the jurors' question was contained in the existing instructions and they should reread those existing instructions.

In one instruction, the burden of proof was correctly described as follows:

> As to each count, if you find from the evidence that each and every element has been proven beyond a reasonable doubt, you will find the defendant guilty as to that count. If you find from that evidence that the People have failed to prove any one or more of the elements of any count beyond a reasonable doubt, you will find the defendant not guilty as to that count.

Moreover, another instruction provided:

> In this case a separate offense is charged against the defendant in each count of the information. Each count *charges a separate and distinct offense and the evidence and law applicable to each count should be considered separately, uninfluenced by your decision as to any other count.* The fact that you may find the defendant guilty or not guilty on one of the offenses charged should not control your verdict as to any other offense charged. The defendant may be found guilty or not guilty of any one or all of the offenses charged. (emphasis added)

In light of these instructions, the court's response to the jury's question was adequate and correct, and it did not affect any substantial right of the defendant during trial.

The cause is remanded for further proceedings on the *Batson* issue. If the trial court determines that the prosecutor's jury selection procedures violated defendant's right to equal protection of the law, the judgment of conviction is reversed and a new trial shall be held. If the trial court determines that the prosecutor's jury selection procedures did not violate defendant's right to equal protection of the law, the judgment of conviction is affirmed, subject only to defendant's right to appeal that ruling.

RULAND, J., concurs.

JONES, J., dissents.

Judge JONES dissenting.

While I concur with part of the result reached by the majority in Part I and with its disposition of the remaining allegations of error, I dissent from the remand.

I agree with the majority that the defendant established a *prima facie* case for purposeful discrimination on the part of the prosecutor here. *See Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *United States v. Chalan,* 812 F.2d 1302 (10th Cir.1987). The prosecutor was given the opportunity to overcome the defendant's showing and failed to do so. There is no indication that the trial court did not consider all other attendant circumstances and, therefore, on remand, has nothing more to consider.

Thus, I conclude that the trial court erred in not acknowledging, as a matter of law, the unrebutted prima facie showing of purposeful discrimination by the prosecutor and in failing, therefore, to declare a mistrial. Accordingly, I would reverse the judgments of conviction and remand for a new trial.