HARRISON, William Howard

v.

RYAN, Joseph M., Supt., S.C.I. Dallas, Pa. and The Attorney General of the State of Pennsylvania.

Appeal of Joseph M. RYAN, The Attorney General of the State of Pennsylvania and Ronald D. Castille,

HARRISON, William Howard, Appellant in No. 90–1220,

v.

RYAN, Joseph M., Supt., S.C.I. Dallas, Pa. and The Attorney General of the State of Pennsylvania.

Nos. 90–1175, 90–1220.

United States Court of Appeals, Third Circuit.

Argued June 27, 1990.

Decided July 25, 1990.

---

Michael J. Kelly (argued), Asst. Defender, Defender Ass'n of Philadelphia, Federal Court Div., Philadelphia, Pa., for appellee/cross-appellant.

Kathy L. Echternach (argued), Asst. Dist. Atty., Elizabeth J. Chambers, Chief, Federal Litigation, Gaele McLaughlin Barthold, Deputy Dist. Atty., William G. Chadwick, Jr., First Asst. Dist. Atty., Ronald D. Castille, Dist. Atty., Philadelphia, Pa., for appellant.

Before SLOVITER and MANSMANN, Circuit Judges, and THOMPSON, District Judge.[*]

## OPINION OF THE COURT

MANSMANN, Circuit Judge.

In this appeal from the grant of a writ of habeas corpus, the Commonwealth of Pennsylvania contends that the petitioner, William Howard Harrison, is not entitled to habeas relief under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), which prohibits the prosecution's use of peremptory challenges to exclude individuals from serving as jurors on the basis of race. Because Harrison's appeal from the judgment of sentence was on direct review in the state court system at the time of the *Batson* decision, and because the prosecution was unable to articulate a racially neutral reason for its peremptory challenge of a black jury venireperson, we will affirm the decision of the district court. Harrison's cross-appeal is mooted by our decision in his favor in the government's appeal.[1]

### I.

In September, 1982, the petitioner, William Howard Harrison, was tried and convicted of robbery and conspiracy. During the jury selection process, the prosecutor used six of his eight peremptory challenges to dismiss jury venirepersons from the jury panel. All six were black; Harrison is black. Harrison's trial counsel timely objected to the prosecutor's use of peremptory challenges to exclude all black venirepersons.

In April, 1986, the Supreme Court decided *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and held that the equal protection clause is violated when venirepersons are excluded from the jury on the basis of race. At that time, Harrison's direct appeal from his conviction

---

[*] Honorable Anne E. Thompson of the United States District Court for the District of New Jersey, sitting by designation.

1. Harrison alleged in his cross-appeal that the magistrate's determination that the prosecutor had not discriminated by using his peremptory challenges against two other veniremen was clearly erroneous. In light of our holding which mandates a new trial, we need not address this contention. We note, however, that the determination of whether the prosecutor's reason was racially neutral is a factual determination and therefore entitled to great deference. *Batson*, 476 U.S. at 98, n. 21, 106 S.Ct. at 1724, n. 21. Harrison did not offer evidence to show that the determination as to the two veniremen was clearly erroneous.

was pending before the Pennsylvania Superior Court, which affirmed his conviction in May of 1986. The Pennsylvania Supreme Court denied allocatur in December, 1986.

On November 19, 1987, Harrison filed a petition for writ of habeas corpus, challenging his conviction and incarceration. He alleged that the prosecutor had impermissibly used race as a factor, when using his peremptory challenges, in order to exclude Blacks from the jury. The United States Magistrate held a hearing in October of 1988, to determine whether the prosecutor could provide clear, specific and racially neutral explanations for his peremptory challenges. The magistrate issued a Report and Recommendation concluding that the prosecutor was able to articulate racially neutral explanations for the dismissal of five of the six venirepersons, but was unable to explain the dismissal of the sixth.[2] Consequently, the magistrate recommended that the certificate of probable cause be issued and the writ granted.

The district court adopted the Report and Recommendation of the magistrate and granted the writ. The district court then ordered that the Commonwealth either retry the petitioner within 90 days or release him. The Commonwealth appealed from the grant of the writ.

Because Harrison's appeal from his conviction was on direct review in the Pennsylvania state court system at the time of the Supreme Court's decision in *Batson*, we must apply the new rule. *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) (new rule for the conduct of criminal prosecutions is to be applied to all cases, state or federal, pending on direct review or not yet final). The district court's factual determinations, including issues of credibility, are entitled to great deference and are not to be overturned unless clearly erroneous. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). As to matters concerning questions of law, however, we have plenary review.

## II.

In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court reaffirmed a principle decided over one hundred years earlier that "the State denies a black defendant equal protection of the laws when it puts him on trial before a jury from which members of his race have been purposefully excluded." 476 U.S. at 85, 106 S.Ct. at 1716, *citing Strauder v. West Virginia*, 100 U.S. 303, 25 L.Ed. 664 (1880). Moreover, the Court noted, racial discrimination in the selection of jurors not only harms the defendant but also harms the excluded juror and brings into question the fairness of the judicial system. *Id.* 476 U.S. at 87, 106 S.Ct. at 1718.

To avoid the crippling burden of proof which has been placed on the defendant by some courts to establish the existence of a violation of the equal protection clause, the Court discerned the elements of a prima facie case from the many cases applying *Strauder*. 476 U.S. at 92–94, 106 S.Ct. at 1720–1722. Thus, to establish a case of purposeful discrimination, the defendant must show that

he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate'. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empaneling of the petit jury, as in the selection of the venire,

**2.** The magistrate did recognize that the race-neutral reasons articulated by the prosecutor with respect to several black jurors were not strong: (1) Juror Logue had a "liberal arts" education; (2) Juror Nottingham was tentative in her responses; and (3) Juror Toney sat next to and was talking to Juror Edwards who had previously been struck.

raises the inference of purposeful discrimination.

*Batson,* 476 U.S. at 96, 106 S.Ct. at 1723. Once the defendant establishes the prima facie showing, the State has the burden of articulating a racially neutral reason for challenging the black venirepersons. While the prosecutor's explanation need not rise to the level necessary to justify a challenge for cause, a mere affirmation of good faith is insufficient. *Id.* at 97, 106 S.Ct. at 1723.

■ In the case before us, Harrison established that he was a member of a cognizable race, *i.e.,* he is black, and that the prosecutor used six of his eight peremptory challenges to eliminate six black venirepersons from the jury. In order to determine if other factors or circumstances could have resulted in the dismissal of the black venirepersons, an evidentiary hearing was necessary.

■ The magistrate thus conducted a hearing at which the prosecutor reconstructed the jury selection through the use of his notes. Based upon the examination of the prosecutor and the transcript of the jury voir dire, the magistrate concluded that of the six black jurors excluded by peremptory challenge, only one challenge was unexplained. The prosecutor believed it may have been due to her age (70 at the time) but was not certain. The transcript of the evidentiary hearing reveals the following colloquy:

Q. Now, the notation O.K. would mean what to you at this time?

A. That means she was okay. I was going to take her as a juror, that I was going to accept her.

Q. But you did not, obviously.

A. Correct.

Q. And what if you can, tell us what would be the reason that you would strike her?

A. I don't know.

Q. You don't have a present recollection, is that correct?

A. That's right.

    \*      \*      \*      \*      \*      \*

A. Just looking at these notes, I don't know. I don't have her age down here. The fact that her son is a retired police officer, I assume she is an older woman. That could have been a factor; I don't know.

Appendix at 198. Due to this lack of certainty, the magistrate found that the Commonwealth failed to rebut Harrison's prima facie showing of racial discrimination as to the one juror. Indeed, the magistrate stated:

The reason why I must reject this explanation is not because of age but because the prosecutor could not recall his reason. The testimony which I credit is summarized by his repeated statement *"I don't know."* Since this is not a satisfactory explanation under *Batson,* I conclude the evidence is not acceptable and the Commonwealth has failed to meet the standard.

Appendix at 263. We agree with the magistrate, and with the district court which approved the magistrate's Report and Recommendation, that the prosecutor's failure to recall his reason for using a peremptory challenge to strike the juror was insufficient to satisfy the *Batson* requirement that the "prosecutor ... must articulate a neutral explanation related to the particular case to be tried." 476 U.S. at 98, 106 S.Ct. at 1724. It is certainly not surprising that the prosecutor could not recall his reason given the length of time which passed between jury selection and the *Batson* hearing. Indeed, the difficulty of the prosecution to recall reasons for peremptory challenges was the reason the Supreme Court decided not to apply *Batson* to cases on collateral review. *See Allen v. Hardy,* 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986). Certain other factors, however, most notably the interests of justice, require retroactive application of *Batson* for cases on direct review even where a long period of time occurs in the state court appellate process. This is especially true here where defense counsel timely objected to the use of peremptory challenges, the number of peremptory challenges exercised against Blacks was so great, the race neutral reasons given for striking other black

jury venirepersons were so weak, and the prosecutor was unable to articulate a race neutral reason for striking one of the black venirepersons.

■ Having determined that the Commonwealth has failed to meet its burden, *i.e.*, that the "prosecutor must give a 'clear and reasonably specific' explanation of his 'legitimate reasons' for exercising the challenges," *Batson*, 476 U.S. at 98, n. 20, 106 S.Ct. at 1724, n. 20, (*citing Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 258, 101 S.Ct. 1089, 1096, 67 L.Ed.2d 207 (1981)), we are now faced with the question of whether the exclusion of one black juror from the jury on the basis of race is sufficient to require a new trial pursuant to *Batson*. We hold that it is.

The Court in *Batson* was necessarily concerned about the effect of racial discrimination within the judicial system where it "is most pernicious because it is a 'stimulant to that race prejudice which is an impediment to securing to black citizens that equal justice which the law aims to secure to all others.'" 476 U.S. at 88, 106 S.Ct. at 1718, *citing Strauder v. West Virginia*, 100 U.S. at 308. Moreover, the Court noted that

> [j]ust as the Equal Protection Clause forbids the States to exclude black persons from the venire on the assumption that blacks as a group are unqualified to serve as ... jurors, so it forbids the States to strike black veniremen on the assumption that they will be biased in a particular case simply because the defendant is black. The core guarantee of equal protection, ensuring citizens that their State will not discriminate on account of race, would be meaningless were we to approve the exclusion of jurors on the basis of such assumptions, which arise solely from the jurors' race.

*Batson*, 476 U.S. at 97–98, 106 S.Ct. at 1723–1724. While the Court recognized the administrative burdens the prosecution and trial courts would face in following the *Batson* mandate, the Court also recognized that "[b]y requiring trial courts to be sensitive to the racially discriminatory use of peremptory challenges, our decision enforc-es the mandate of equal protection and furthers the ends of justice." *Id.* at 99, 106 S.Ct. at 1724. This holds true when even one black person is excluded for racially-motivated reasons.

Our holding is supported by decisions of two of our sister courts of appeals. In *United States v. David*, 803 F.2d 1567 (11th Cir.1986), the Court of Appeals for the Eleventh Circuit stated: "the striking of one black juror for a racial reason violates the Equal Protection Clause, even where other black jurors are seated, and even when valid reasons for the striking of some black jurors are shown." 803 F.2d at 1571. The court reasoned that the rationale of *Batson* was premised on the notion that black venirepersons are entitled not to be struck for racially motivated reasons and black defendants have the right to be tried in a judicial system which does not exclude on the basis of race. *Id.* The Court of Appeals for the Eighth Circuit held similarly in *United States v. Battle*, 836 F.2d 1084 (8th Cir.1987).

### III.

Since we believe that the *Batson* Court placed the requirements of justice and equal protection above the burden placed on the Commonwealth to retry the defendant before a jury from which no one has been excluded for a racially motivated reason, we conclude that the prosecution's failure to rebut Harrison's prima facie showing of racial discrimination as to one juror dictates the grant of a new trial. We recognize the burden placed on the Commonwealth to retry Harrison after almost nine years have passed. Nevertheless, the intent of the Supreme Court in deciding *Batson* was to guarantee, both to the defendant desiring a jury trial and to the jury venirepersons, that the jury will be selected on a racially non-discriminatory basis. Consequently, we will affirm the order of the district court granting the petitioner's writ of habeas corpus and requiring the Commonwealth to either retry the petitioner within 90 days or release him.