**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RANDALL ALLAN YEE,
    *Petitioner-Appellee,*

v.

BILL DUNCAN, Warden,
    *Respondent-Appellant.*

No. 05-55265

D.C. No.
CV-03-01764-LGB

OPINION

Appeal from the United States District Court
for the Central District of California
Lourdes G. Baird, District Judge, Presiding

Submitted February 9, 2006*
Pasadena, California

Filed March 28, 2006

Before: Alex Kozinski, Stephen S. Trott, and Carlos T. Bea,
Circuit Judges.

Opinion by Judge Bea

---

*This case was submitted for decision without oral argument.

**COUNSEL**

Bill Lockyer, Attorney General of the State of California, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Senior Assistant Attorney General, Kevin R. Vienna, Deputy Attorney General, and Barry J.T. Carlton, Supervising Deputy Attorney General, San Diego, California, for the respondent-appellant.

Randall Allan Yee, San Luis Obispo, California, pro se.

**OPINION**

BEA, Circuit Judge:

When a criminal defendant has established a prima facie case of gender discrimination in the prosecutor's use of a peremptory challenge during jury selection, and the prosecutor is unable to recall the basis for her challenge, may the trial court substitute findings of the prosecutor's sincerity, together with circumstantial evidence indicating a lack of gender-based motive, for the prosecutor's failure to offer a gender-neutral explanation for the challenge? No. Under these circumstances, the law requires the explanation; we affirm the judgment of the district court conditionally granting the writ of habeas corpus.

The prosecutor in Randall Allan Yee's 1999 trial in California state court exercised eight of her available ten peremptory challenges against male venire-members. *See* Cal. Civ. Proc. Code § 231(a). Yee timely objected under *Wheeler*,[1] and

---

[1] *People v. Wheeler*, 22 Cal. 3d 258 (1978), is the California counterpart to *Batson v. Kentucky*, 476 U.S. 79 (1986), which held that purposeful discrimination in the jury selection process violates the Equal Protection Clause of the Fourteenth Amendment, and established a three-step evidentiary framework to determine whether peremptory challenges were exer-

the trial judge determined Yee established a prima facie case of gender discrimination. After providing neutral reasons for seven of the strikes, the prosecutor stated she was unable to remember why she struck one of the male venire-members, Juror X. The trial court rejected Yee's *Wheeler/Batson* objection, and the California Court of Appeal affirmed his conviction.

Yee petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on multiple grounds, including that the prosecutor's peremptory challenge against Juror X violated the Equal Protection Clause of the Fourteenth Amendment. The district court granted the writ based only on Yee's equal protection claim under *Batson*. The government appeals the district court's grant of the writ; Yee does not cross-appeal the court's denial of his other claims for habeas relief.

The issue before us, therefore, is narrow: Was it contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court, for the California Court of Appeal to uphold the peremptory challenge when the prosecutor failed to provide any explanation for striking Juror X, but offered nondiscriminatory reasons for striking each of the other challenged male jurors? We hold that it was. In *Batson*, and the line of cases following it, the Supreme Court has clearly established that the proponent of the strike must articulate a clear and reasonably specific neutral explanation for each of the challenged strikes to meet her burden of production at step two of the familiar three-step *Batson* analysis. Here, that is exactly what the prosecutor failed to do.

---

cised to exclude jurors impermissibly. *Wheeler* held the use of peremptory challenges to remove prospective jurors on the sole ground of group bias violates article I, section 16, of the California Constitution. To the extent the *Wheeler* standard differs from *Batson* (as it does with respect to step one) the federal standard controls. *See Johnson v. California*, ___ U.S. ___, 125 S. Ct. 2410, 2413-14 (2005).

We have jurisdiction pursuant to 28 U.S.C. § 2253 and we affirm.

## I.

The underlying crime facts, while serious, do not affect this appeal. In short, Randall Allan Yee, a dental assistant, engaged in predatory, unconsented sexual contact with three female dental patients, twice while the patients were under anesthesia. On October 21, 1999, Yee was charged with three counts of sexual battery in violation of California Penal Code § 243.4(c),[2] and three counts of committing a lewd and lascivious act upon a child under age 14 in violation of California Penal Code § 288(a).[3]

During voir dire, the prosecutor exercised eight of her nine peremptory challenges against male jurors.[4] After the prosecu-

---

[2] Any person who, for the purpose of sexual arousal, sexual gratification, or sexual abuse, causes another, against that person's will while that person is unlawfully restrained either by the accused or an accomplice, or is institutionalized for medical treatment and is seriously disabled or medically incapacitated, to masturbate or touch an intimate part of either of those persons or a third person, is guilty of sexual battery. A violation of this subdivision is punishable by imprisonment in a county jail for not more than one year, and by a fine not exceeding two thousand dollars ($2,000); or by imprisonment in the state prison for two, three, or four years, and by a fine not exceeding ten thousand dollars ($10,000).

Cal. Penal Code § 243.4(c) (1999).

[3] Any person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years.

Cal. Penal Code § 288(a) (1999).

[4]The prosecutor was permitted to use ten peremptory challenges—one was used to strike a female and one was not used.

tor exercised her eighth peremptory challenge against a male, Yee objected under *Wheeler*. Yee then requested the court declare a mistrial and begin jury selection anew, or, in the alternative, disallow the prosecutor to exercise her peremptory challenge against the eighth male.

The trial judge found a prima facie case of gender discrimination. It is undisputed that the prosecutor then offered gender-neutral reasons for seven of her eight challenges to male venire-members. The prosecutor, however, was unable to remember why she struck one male venire member, Juror X.[5] Despite the prosecutor's failure to offer any explanation for striking Juror X, the trial judge denied Yee's *Wheeler* objection, finding there had been "no systematic exclusion of the male gender." The trial judge noted (1) the previously accepted jurors included four males, (2) he concurred with the prosecutor's assessment of some of the male jurors challenged, and (3) "the court's taking counsel at her representation that [challenging males] is not her intent."

On March 10, 2000, the jury convicted Yee on all counts.

---

[5]In response to the court's request, the prosecutor attempted to offer an explanation for striking each male juror in the order she exercised her peremptory strikes. When she came to Juror X, the prosecutor explained "I'm trying to remember what it was about [Juror X]. If I can skip that one for a moment and move on." With the judge's permission, the prosecutor then offered explanations for each of the remaining strikes. Returning to Juror X, the prosecutor explained:

> And [Juror X], unfortunately, your honor, I can't—I can't recall specifically what it was about [Juror X]. I have down that he was a system analyst and that he was on a prior jury that reached a verdict and his wife was a homemaker, but other than that, to be honest, I can't recall.

We cannot interpret the prosecutor's statements regarding Juror X's profession, prior jury service or Juror X's wife's occupation as grounds for the prosecutor's exercise of the strike because to do so would be contrary to the prosecutor's explicit statement that she could not recall the reason for her strike.

On July 7, 2000, the court sentenced Yee to eight years in state prison. On direct appeal, the California Court of Appeal affirmed Yee's conviction, holding the prosecutor satisfied her burden of production at step two of the *Batson* analysis even though she failed to offer any reason for striking Juror X. *People v. Yee*, No. G027598, 2002 WL 31661266, at *11-12 (Cal. Ct. App. Nov. 26, 2002). On February 11, 2003, the California Supreme Court denied review.

Yee filed a federal habeas petition on January 8, 2004. He raised four claims, including that the prosecution impermissibly exercised peremptory challenges against male jurors. The district court granted relief[6] on that ground only, finding (1) "the prosecutor's failure to state a legitimate gender-neutral reason for striking Juror X from the jury violated Petitioner's constitutional rights," and (2) the California Court of Appeal's decision affirming the trial court was an "objectively unreasonable application of *Batson* and its progeny." We review *de novo* the district court's grant or denial of a 28 U.S.C. § 2254 petition for writ of habeas corpus. *Daniels v. Woodford*, 428 F.3d 1181, 1196 (9th Cir. 2005).

Yee is in custody pursuant to a judgment of a state court. Therefore, we may not affirm the district court's grant of habeas relief unless the California Court of Appeal's determination "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). We may, however, affirm the dis-

---

[6]The district court ordered:

a conditional writ be granted as follows: Respondents shall release Petitioner from custody and discharge him from all adverse consequences of his conviction [ ], unless Respondent determines within sixty (60) days of the date of the Judgment herein becomes final that the case will be re-tried.

trict court on any ground supported by the record, even if it differs from the district court's rationale. *Earp v. Ornoski*, 431 F.3d 1158, 1181 n.17 (9th Cir. 2005) (citing *Lambert v. Blodgett*, 393 F.3d 943, 965 (9th Cir. 2004)).

The phrase "clearly established Federal law, as determined by the Supreme Court" "refers to the holdings, as opposed to the dicta, of [Supreme] Court[ ] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Therefore, a state court's decision is "contrary to" federal law under section 2254 only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 412-13.

A state court decision is an "unreasonable application of" Supreme Court precedent if it "correctly identifies the correct governing legal rule [from Supreme Court cases] but applies it unreasonably to the facts of a particular . . . case." *Id.* at 407-08. The state court may also unreasonably apply Supreme Court authority if it "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407.

In applying these standards, we look to the "last reasoned decision" in the state court system, in this case the opinion of the California Court of Appeal. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

## II.

**[1]** In *Batson v. Kentucky*, 476 U.S. 79 (1986), the Supreme Court held "[p]urposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." *Id.* at 86. *Batson* established a three-step

procedure for challenges to peremptory challenges on the basis of race. First, the Court noted that "[a]s in any equal protection case, the burden is, of course, on the defendant who alleges discriminatory selection of the venire to prove the existence of purposeful discrimination." *Id.* at 93 (internal quotation marks omitted). Therefore, at step one:

> To establish such a case, the defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race.

*Id.* at 96 (internal citations omitted).[7]

**[2]** "Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors."[8] *Id.* at 97. At step two, "[t]he prosecutor therefore must articulate a neutral explanation related to the particular case to be tried. The trial court then will have the duty to determine if the defendant has established purposeful discrimination." *Id.* at 98 (footnote omitted). This last statement is the foundation for "step three" of the *Batson* analysis.

While the *Batson* Court "decline[d] [ ] to formulate particular procedures to be followed upon a defendant's timely objection to a prosecutor's challenges," *id.* at 99, since *Batson* the Court has consistently analyzed discriminatory jury selection challenges through a three-step procedure.[9]

---

[7]In *Powers v. Ohio,* 499 U.S. 400, 402 (1991), however, the Court held that a criminal defendant may object to group-based exclusion of jurors regardless of whether defendant is a member of the group.

[8]While *Batson* prohibited discrimination in jury selection on the basis of race, its holding has since been extended to prohibit gender discrimination as well. *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 129 (1994).

[9]For example, in its recent opinion in *Johnson v. California*, 125 S. Ct. 2410 (2005), the Supreme Court articulated the *Batson* analysis in the familiar three-step format:

Based on the plain language of Supreme Court opinions prior to November 26, 2002 (the date of the California Court of Appeal's decision), the California Court of Appeal's holding that the proponent of a strike may satisfy her burden of production at step two of the *Batson* analysis without offering a race and gender-neutral explanation for the strike is contrary to clearly established federal law. In *Batson* itself, the Court explained:

> Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. Though this requirement imposes a limitation in some cases on the full peremptory character of the historic challenge, we emphasize that the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause. . . . *Nor may the prosecutor rebut the defendant's case merely by denying that he had a discriminatory motive or affirming his good faith in making individual selections.* If these general assertions were accepted as rebutting a defendant's prima facie case, the Equal Protection Clause would be but a vain and illusory

Those three *Batson* steps should by now be familiar. First, the defendant must make out a prima facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose. Second, once the defendant has made out a prima facie case, the burden shifts to the State to explain adequately the racial exclusion by offering permissible race-neutral justifications for the strikes. Third, if a race-neutral explanation is tendered, the trial court must then decide whether the opponent of the strike has proved purposeful racial discrimination.

*Id.* at 2416 (alterations, citations and internal quotation marks omitted). Of course, because *Johnson* was decided after the date of the California Court of Appeal's decision in this case, we cite it only as an example of the Supreme Court's consistent interpretation of *Batson* to date, and do not rely on it for our holding.

requirement. The prosecutor therefore *must articulate* a neutral explanation related to the particular case to be tried.

476 U.S. at 97-98 (alterations, citations and internal quotation marks omitted) (emphasis added). As this passage makes clear, at step two the prosecutor *must articulate* a neutral explanation for the challenge of *individual selections;* she may not rely on general assertions of good faith or denials of discrimination.[10]

**[3]** Furthermore, in *J.E.B. v. Alabama ex rel. T.B.*, applying the *Batson* analysis to gender discrimination, the Court clearly stated that the party exercising the challenge must explain the basis for the strike at step two.

As with race-based *Batson* claims, a party alleging gender discrimination must make a prima facie showing of intentional discrimination before *the party exercising the challenge is required to explain the basis for the strike*. When an *explanation is required*, it need not rise to the level of a 'for cause' challenge; rather, it merely must be based on a juror characteristic other than gender, and *the proffered explanation* may not be pretextual.

511 U.S. at 144-45 (citation omitted) (emphasis added). In *J.E.B.*, therefore, the Supreme Court made clear that the proponent of the strike's duty to come forward with a neutral explanation for the challenged strike at step two of the *Batson* analysis applies equally in gender discrimination cases as in racial discrimination cases.

Next, in *Purkett v. Elem*, the Court further elaborated on the requirements at step two of the *Batson* analysis:

---

[10]Nothing we say here is meant to impugn the sincerity of the prosecutor in this case, nor to fault the trial judge's decision as to such sincerity. Both simply failed to apply the required law.

> Under our *Batson* jurisprudence, once the opponent
> of a peremptory challenge has made out a prima
> facie case of racial discrimination (step one), *the
> burden of production shifts to the proponent of the
> strike to come forward with a race-neutral explana-
> tion. . . .* The second step of this process does not
> demand an explanation that is persuasive or even
> plausible. At this second step of the inquiry the issue
> is the facial validity of the prosecutor's explanation.
> Unless a discriminatory intent is inherent in the pro-
> secutory's explanation the reason will be deemed
> race neutral.

514 U.S. 765, 767-68 (1995) (per curiam) (alteration, citation
and internal quotation marks omitted) (emphasis added).
While *Purkett* held the reason offered at step two need not be
"persuasive or even plausible," the Court continued to empha-
size that the proponent of the strike bears the burden of pro-
duction to come forward with a race and gender-neutral
explanation.

[4] Thus, at the time of the California Court of Appeal's
decision in this case it was clearly established law that the
proponent of the strike must "articulate" (*Batson*) "an expla-
nation" (*J.E.B.*) to meet her "burden of production" (*Purkett*)
at step two of the *Batson* analysis.[11] Therefore, the determina-

---

[11]*See also Georgia v. McCollum*, 505 U.S. 42, 59 (1992) (applying *Bat-
son*, the Court held "the Constitution prohibits a criminal defendant from
engaging in purposeful discrimination on the ground of race in the exer-
cise of peremptory challenges. Accordingly, if the State demonstrates a
prima facie case of racial discrimination by the defendants, the defendants
must articulate a racially neutral explanation for peremptory challenges");
*Trevino v. Texas*, 503 U.S. 562, 565 (1992) (holding the pre-*Batson* defen-
dant preserved his claim that the state's use of peremptory challenges vio-
lated the Fourteenth Amendment, the Court explained "[*Batson*]
announced the now familiar rule that when a defendant makes a prima
facie showing that the State has exercised its peremptory challenges to
exclude members of the defendant's racial group, the State bears the bur-

tion of the California Court of Appeal that the prosecutor sat-
isfied her burden under *Batson* when she failed to offer any
explanation for striking Juror X is contrary to clearly estab-
lished law as determined by the Supreme Court.

## III.

Careful consideration of California Court of Appeal's rea-
soning does not alter our conclusion. First, the California
Court of Appeal explained that under California law, it is "not
limited to the prosecutor's stated reasons, but may scrutinize
voir dire to determine whether it reveals any nondiscrimina-
tory basis for the challenge." *People v. Yee*, No. G027598,
2002 WL 31661266, at *8 (citing *People v. Howard*, 824 P.2d
1315 (Cal. 1992); *People v. Trevino*, 64 Cal. Rptr.2d 61 (Ct.
App. 1997)). The court noted the voir dire transcript revealed
Juror X had served as a juror on a medical malpractice case,
and "[w]hile that justification for exclusion seems slim, it is
sufficient because exclusion may be based upon trivial or
arbitrary reasons if they are genuine and neutral." *Id.* at *12.

Second, the court held the "[f]ailure to remember the rea-
son for the challenge is . . . roughly equivalent to a mistaken
challenge, which is recognized as a permissible neutral expla-
nation [under California law]." *Id.* at *11 (citing *People v.
Williams*, 16 Cal. 4th 153, 188-89 (1997)). The court reasoned

den of coming forward with a race neutral justification"); *Edmonson v.
Leesville Concrete Co.*, 500 U.S. 614, 631 (1991) (holding the exclusion
of a juror from a civil trial on account of race violates that juror's equal
protection rights and remanding under *Batson* "to consider whether a
prima facie case of racial discrimination has been established . . . requiring
Leesville to offer race-neutral explanations for its peremptory chal-
lenges"); *Teague v. Lane*, 489 U.S. 288, 295 (1989) (reaffirming that *Bat-
son* does not apply retroactively on collateral review, the Court explained
that under *Batson* "[o]nce the defendant makes out a prima facie case of
discrimination, the burden shifts to the prosecutor 'to come forward with
a neutral explanation for challenging black jurors' ") (quoting *Batson*, 476
U.S. at 97).

that "[j]ust as it is self-evidently possible for counsel to err when exercising peremptory challenges, it is possible to forget the reason for exercising the challenge." *Id.* (internal quotation marks and citation omitted).

In conclusion, the court held Yee's *Wheeler/Batson* challenge was properly denied because

> [t]he prosecutor stated permissible reasons for the peremptory challenges and the record supports those reasons. The record reveals additional grounds for exercising peremptory challenges not mentioned by the prosecution. Hence, the record as a whole does not show purposeful discrimination. According deference to the trial court's conclusion the prosecutor did not act with prohibited intent, we conclude substantial evidence supports denial of Yee's *Wheeler* motion. Our conclusion is bolstered by the composition of the final jury. As the trial court noted, the prosecution accepted a jury with four men. This fact is not conclusive, but it is an indication of good faith in exercising peremptories, and an appropriate factor for the trial judge to consider in ruling on a *Wheeler* objection.

*Id.* at *13 (internal quotation marks and citations omitted).

**[5]** First, regardless of California law, as we have previously held, under *Batson* a trial judge may not look beyond the explanations for the strike offered by the prosecutor to satisfy the prosecutor's burden of production at step two. *See Batson*, 476 U.S. at 96 ("The prosecutor therefore must articulate a neutral explanation related to the particular case to be tried."); *see also Paulino v. Castro*, 371 F.3d 1083, 1090, 1092 (9th Cir. 2004) ("[I]t does not matter that the prosecutor might have had good reasons to strike the prospective jurors [based on the record]. What matters is the *real* reason they were stricken"; the trial court may not rely "on its own specu-

lation as to what might have been the prosecutor's reasons"); *Turner v. Marshall*, 121 F.3d 1248, 1251, 1253 (9th Cir. 1997) (holding (1) the prosecutor met her burden at step two by "articulat[ing] explanations for each of the disputed challenges" even though she could not remember all of her reasons for each strike, and (2) the reasons offered in support of the strikes by the state after the evidentiary hearing could not be considered as part of the prosecutor's explanation at step two).

In contrast, valid nondiscriminatory reasons for striking a juror appearing in the voir dire record, but not offered by the prosecutor as her reason for the strike, may be considered at step three as evidence of the prosecutor's nondiscriminatory motive. *Id.* at 1254 ("Finally, although the fact that the prosecutor accepted four African-Americans on the jury may be considered indicative of a nondiscriminatory motive, it is not dispositive. Where the prosecutor's explanation for striking a minority juror is unsupported by the record, empaneling other minority jurors will not salvage her discredited justification." (citation omitted)).

[6] Second, although the California Court of Appeal is correct that the failure to remember the reason for a strike does not necessarily mean that the reason was discriminatory, that finding is irrelevant at step two. At step two, the prosecutor has the burden of production to come forward with a nondiscriminatory explanation for the strike. *Purkett*, 514 U.S. at 767-68. It is not until step three that the court determines if the reason offered by the prosecutor is sufficient to prevent the defendant from carrying his burden of persuasion that the strike was discriminatory. *Batson*, 476 U.S. at 98. At step two, therefore, the prosecutor must produce *an explanation* for the strike to meet her burden of production. *Batson*, 476 U.S. at 98; *J.E.B.*, 511 U.S. at 144-45; *see also United States v. Bishop*, 959 F.2d 820, 826-27 (9th Cir. 1992), *overruled on other grounds as recognized by Boyde v. Brown*, 404 F.3d 1159, 1171 n.10 (9th Cir. 2005) (holding that when "a dis-

criminatory intent is inherent in the prosecutor's explanation," the prosecutor fails to satisfy her burden to articulate a racially neutral explanation for the strike and the *Batson* analysis ends at step two; explaining, "In so holding, we do not intend to question the 'great deference' to which the trial court's factual findings regarding purposeful discrimination in jury selection are entitled. . . . But the role of the judge in assessing the prosecutor's motive only kicks in once a race-neutral justification has been offered."). Therefore, even assuming, without deciding, the California Court of Appeal is correct that a "mistaken strike" satisfies step two because the explanation offered (mistake) is nondiscriminatory, here, the prosecutor failed to offer *any* explanation for the strike and thus failed to satisfy her burden of production at step two.[12]

The remaining reasons offered by the California Court of Appeal for upholding the trial judge's denial of Yee's *Wheeler* objection (the record as a whole did not show purposeful discrimination, deference to the trial judge's determination of the prosecutor's nondiscriminatory intent, and the ultimate makeup of the jury) are all proper considerations at step three of the *Batson* analysis.[13] As previously explained, it is not

---

[12]In addition, we do not accept the notion that failure to offer an explanation can be equated with a mistaken explanation. A mistake can be pointed out and corrected. Here, the failure to explain was pointed out but was not corrected.

[13]*See Bishop*, 959 F.2d at 827.

It is true that representativity and, more generally, a prosecutor's acceptance of black jurors, are factors that a trial judge may take as an indication of non-discriminatory motive [determined at step 3]. However, there is a critical distinction between using proportional representation as evidence of the government's sincerity and using it to offset a constitutional violation, thereby rendering the violation somehow harmless. The latter scenario collides with the fundamental principle that under *Batson*, the striking of *one black juror* for a racial reason violates the Equal Protection Clause.

*Id.* (internal quotation marks and citations omitted).

until step three that the judge looks to the record as a whole, including the ultimate makeup of the jury, to determine whether the prosecutor's intent in striking the jurors was discriminatory. In contrast, at step two the prosecutor need present only a reason for the strike, which is exactly what this prosecutor failed to do.

## IV.

While we hold today that it was contrary to Supreme Court precedent for the California Court of Appeal to determine the proponent of a challenged strike met her burden of production at step two of the *Batson* analysis without producing a gender-neutral explanation for the strike, we recognize that at least one of our sister circuits has held otherwise.[14]

---

[14]In *Carter v. Hopkins*, 151 F.3d 872 (8th Cir. 1998), the Eighth Circuit held *Batson*'s three-step analysis did not apply, and thus the prosecutor's failure to remember his reasons for striking the challenged jurors was not fatal, where the defendant failed to raise his *Batson* claim until approximately eleven years after the completion of trial. In so holding, the Eighth Circuit noted that "[o]rdinarily, a claim that peremptory challenges have been exercised in a discriminatory manner is procedurally defaulted if there has been no timely objection," however, because the state failed to raise procedural default in its answer to the habeas petition, the district court deemed any such defense waived. *Id.* at 875 n.8. Because Yee timely objected to the prosecutor's peremptory challenges, *Carter* is readily distinguishable.

Also relying on the timely objection rule, in *United States v. Forbes*, 816 F.2d 1006, 1011 (5th Cir. 1987) the Fifth Circuit held a defendant may not, on appeal, challenge the prosecutor's failure to offer a reason for one of three peremptory strikes challenged under *Batson* if the defendant failed to object to the lack of explanation at trial. *Forbes* was decided only one year after *Batson* and evidences a misunderstanding of that case's holding by both the prosecutor and defense attorney at trial—which took place only two months after *Batson* was decided. *Id.* at 1009. Since that time, *Batson* has not been understood to require a defendant to object both initially to the prosecutor's peremptory strikes under *Batson*, and then separately to each explanation offered by the prosecutor in order to preserve his *Batson* challenge for appeal. Because the timely objection rule has not been raised in this case, and we do not think it applicable, to the extent *Forbes* is on point, it too is readily distinguishable.

**[7]** In *Bui v. Haley*, the Eleventh Circuit held it was not an unreasonable application of Supreme Court precedent for the Alabama state court to hold a trial judge may rely on "circumstantial evidence to support an inference that a race-neutral reason underlies a particular strike, despite the lack of any explicit race-neutral explanation from the State." 321 F.3d 1304, 1317 (11th Cir. 2003). In *Bui*, after the prosecutor, Evans, used nine of his thirteen peremptory challenges to strike black venire members, the defendant, Bui, objected "to the systematic exclusion of blacks." *Id.* at 1309. Evans responded: "We struck those who we believed would acquit. Those strikes were not based on race but on just our exercising our right to strike jurors we feel would be most favorable to acquit. On that grounds only." *Id.* The trial court declared a recess without ruling on Bui's objection. Bui was convicted and the Alabama Court of Criminal Appeals and Alabama Supreme Court affirmed. The U.S. Supreme Court vacated both appellate decisions and remanded the case for reconsideration in light of *Powers v. Ohio*.[15] By the time the state circuit court scheduled a *Batson* hearing, Evans had left the District Attorney's office to become the state Attorney General. *Id.* at 1310. Therefore, Brooks, the assistant prosecutor who had served as co-counsel during the trial but had not participated in voir dire, appeared and offered reasons for the strikes derived from her notes (but not Evans's notes), the trial transcript and juror history lists. *Id.* at 1311. Ultimately, Brooks offered neutral reasons for striking eight venire members but was unable to articulate any reason for striking one venire member (Strike 11).

The Alabama Court of Criminal Appeals held (1) the court could not rely on the reasons offered by Brooks because Evans was the proponent of the strikes and Brooks did not claim any knowledge of Evans' actual reasons for the strikes,

---

[15]499 U.S. 400 (1991) (holding a criminal defendant can bring a third party challenge to the peremptory striking of jurors based on race whether or not he is of the same race as the stricken jurors).

and (2) even if Brooks' reasons were acceptable, her total failure to offer any reason for the eleventh strike failed to satisfy the state's burden at step two. On appeal, the Alabama Supreme Court reversed both holdings. Bui petitioned for a federal writ of habeas corpus. The district court upheld the Alabama Supreme Court on both *Batson* issues.

On appeal, the Eleventh Circuit reversed in part, holding (1) the trial court could not reasonably have found Brooks was in a position to know Evans' reasons for the strikes and, therefore, could not rely on Brooks' reasons under *Batson*, *id.* at 1315, and (2) it was not unreasonable to conclude a trial judge may rely on "circumstantial evidence to support an inference that a race-neutral reason underlies a particular strike, despite the lack of any explicit race-neutral explanation from the State." *Id.* at 1317. The court explained:

> [M]ere failure to explain every strike of black jurors will not necessarily prevent a prosecutor from successfully rebutting a prima facie case of race discrimination, where there is sufficient circumstantial evidence from which the court can deduce a race-neutral reason. The error of the district court does not lie in its affirming the Alabama Supreme Court's reliance on this legal principle, but in upholding an unreasonable determination of the facts in light of the evidence contained in the record.

*Id.*

**[8]** As the Supreme Court has repeatedly explained, and as we have detailed above, however, the prosecutor has the burden to produce a reason for the challenged strikes at step two. Consideration of circumstantial evidence to support the prosecutor's nondiscriminatory motive is properly considered at step three and may not be used to excuse the prosecutor's failure to meet her burden of production at step two. Because *Bui*'s analysis regarding Juror 11 impermissibly conflates

steps two and three of *Batson*, we decline to follow its holding.

In *Harrison v. Ryan*, the Third Circuit held that when a prosecutor fails to offer any reason for exercising a peremptory challenge (due to his inability to remember) the prosecutor failed to satisfy step two of the *Batson* analysis. 909 F.2d 84, 87 (3rd Cir. 1990).[16] Harrison was tried and convicted of robbery in Pennsylvania state court. During jury selection, the prosecutor had available eight peremptory challenges; he used six to strike black venire members and left two unused. *Id.* at 85. Harrison "objected to the prosecutor's use of peremptory challenges to exclude all black venirepersons."[17] *Id.*

While Harrison's direct appeal was pending, the Supreme Court decided *Batson*. The Pennsylvania Superior Court affirmed Harrison's conviction, and the Pennsylvania Supreme Court denied review. *Id.* at 86. Harrison filed a writ of habeas corpus in the federal district court. At a hearing before a magistrate judge, the prosecutor articulated neutral explanations for the dismissal of five venire-members but was unable to recall why he challenged the sixth. *Id.* The district court granted the writ. *Id.* On appeal, the Third Circuit affirmed, holding (1) by failing to offer a reason for striking Juror 6, the prosecutor failed to meet his burden at step two, and (2) the failure to offer a neutral reason for striking even one juror requires issuance of the writ. *Id.* at 87-88.

> [T]he prosecutor's failure to recall his reason for using a peremptory challenge to strike the juror was

---

[16]*Harrison v. Ryan*, 909 F.2d 84 (3rd Cir. 1990) was decided before the enactment of Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996) and, therefore, does not apply the standards set forth in 28 U.S.C. § 2254.

[17]It appears from this language that the prosecutor excluded all black members of the venire pool; however, the opinion does not clearly explain this point. The opinion also fails to include the trial judge's ruling on this objection. It is assumed the objection was denied.

insufficient to satisfy the *Batson* requirement that the "prosecutor . . . must articulate a neutral explanation related to the particular case to be tried." . . . Having determined that the Commonwealth has failed to meet its burden, *i.e.*, that "the prosecutor must give a clear and reasonably specific explanation of his legitimate reasons for exercising the challenges," we are now faced with the question of whether the exclusion of one black juror from the jury on the basis of race is sufficient to require a new trial pursuant to *Batson*. We hold that it is.

*Id*. at 87-88 (internal citations omitted) (language within quotation marks is quoted from *Batson*).[18]

Because we conclude *Harrison v. Ryan* properly applied *Batson* while *Bui v. Haley* erroneously conflated steps two and three of *Batson*'s analysis, our holding follows that of the Third Circuit rather than the Eleventh.

## V.

**[9]** The California Court of Appeal impermissibly compressed steps two and three of the *Batson* analysis into a single step by looking to the record as a whole and the composition of the jury to excuse the prosecutor's failure to

---

[18]In *Hardcastle v. Horn*, 368 F.3d 246, 260 (3d Cir. 2004), the Third Circuit affirmed its holding in *Harrison* that when a prosecutor offers no explanation for one of his six strikes due to his failure to remember, the prosecutor fails to meet his burden at step two. *See id*. at 255 (holding the prosecutor "failed to identify adequate bases for the striking of Venirepersons 11 and 12, and thus [the trial court] should have terminated its analysis and found the existence of a *Batson* violation at step two of the inquiry" despite the prosecutor's articulation of neutral reasons for the ten other challenged strikes). In *Hardcastle*, however, the court also held *Harrison* does not prevent the state from attempting to reconstruct *voir dire* during a later habeas hearing despite the prosecutor's failure to recall his motivations at the time of the habeas hearing. *Id*. at 260.

satisfy her burden of production at step two. Because the California Court of Appeal's determination that the prosecutor satisfied her burden of production at step two of the *Batson* analysis despite her failure to offer any reason for striking Juror X is contrary to clearly established law as determined by the Supreme Court, the district court's conditional grant of Yee's petition for a writ of habeas corpus is AFFIRMED.