

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-6-2007

# Susanto v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3803

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Susanto v. Atty Gen USA" (2007). *2007 Decisions.* Paper 620.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/620

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 05-3803 & 05-4795
_____

RUDY SUSANTO,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent
_____

On Petition for Review of an Order of
the Board of Immigration Appeals
U.S. Department of Justice
(BIA No. A95-368-427)
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
February 26, 2007

Before: McKEE and ALDISERT, Circuit Judges and RESTANI,* Judge

(Opinion Filed: August 6, 2007)

_____

*Honorable Jane A. Restani, Chief Judge of the United States Court of International
Trade, sitting by designation.

1

_____

OPINION

_____

McKee, <u>Circuit</u> <u>Judge</u>:

In these consolidated appeals, Rudy Paulus Susanto petitions for review of two orders of the Board of Immigration Appeals. In the first, the BIA denied Susanto's request for asylum, withholding of removal and protection under the United Nations Convention Against Torture ("CAT"). In the second, the Board denied Susanto's motion to reopen proceedings. For the reasons that follow, we will deny both petitions.

**I.**

Since we write primarily for the parties, we will forgo lengthy recitation of the facts and procedural history well-known to the parties. We have jurisdiction to review a final order of removal pursuant to 8 U.S.C. §§ 1252(a)(1), (d)(1). Where the BIA issued decisions on the merits, we review the BIA's decisions rather than the IJ's. *Gao v. Ashcroft*, 299 F.3d 266, 271 (3d. Cir. 2002). We review the BIA's decision denying asylum, withholding of removal, and relief under the CAT for substantial evidence on the record. Our review of Susanto's argument that the BIA erred in applying our decision in *Lie v. Ashcroft*, 396 F.3d 530 (3d Cir. 2005), retroactively is reviewed *de novo*. We review the BIA's denial of Susanto's motion to reopen for abuse of discretion.

2

**A.**

To establish eligibility for asylum or withholding of removal, Susanto must establish that he is a "refugee." 8 U.S.C. §§ 1158(b)(1). He must prove by a preponderance of the evidence that he is unwilling to return to Indonesia "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. 1101(a)(42)(A). Persecution can either be individualized or part of a "pattern or practice." 8 C.F.R. § 1208.13(b)(2)(iii)(A). To be well-founded, an alien's fear of persecution must be subjectively genuine and objectively reasonable. *Zubeda v. Ashcroft*, 333 F.3d 463, 469 (3d Cir. 2003). Past persecution raises a rebuttable presumption that fear of persecution is well-founded 8 C.F.R. § 1208.13(b)(1). As we noted in *Fatin v. INS*, "the BIA [has] interpreted 'persecution' to include threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." 12 F.3d 1233, 1240 (3d Cir. 1993) (citing *Matter of Acosta*, 19 I. & N. Dec. 211, 222 (BIA 1985)). Moreover, the harm must be "committed by the government or forces the government is either unable or unwilling to control." *Abdurahman v. Ashcroft*, 330 F.3d 587, 592 (3d Cir. 2003).

"Under the substantial evidence standard, the BIA's finding must be upheld unless the evidence not only supports a contrary conclusion, but compels it." *Abdille v. Ashcroft*, 242 F.3d 477, 483-84 (3d Cir. 2001); *see also INS v. Elias-Zacharias*, 502 U.S.

478, 480 (1992). Our review is limited to the "record on which the order of removal is based." 8 U.S.C. 1252(b)(4)(A). The BIA did not disturb the IJ's finding that Susanto was credible. *Matter of Susanto*, No. A95-368-427 (BIA 2005), at 1; App. 006 [hereinafter Susanto Appeal]. Accordingly, the BIA accepted that Susanto's subjective fear of persecution is genuine. The BIA concluded, however, that Susanto's fear was not objectively reasonable and therefore not well-founded. *Id.* at App. 007; see *Zubeda*, 333 F.3d at 469.

The BIA reviewed Susanto's evidence of specific instances of conflicts with ethnic Indonesians and determined that he had not shown these were consistently motivated by ethnicity or religion but noted that, even if they were, the harm Susanto suffered as a result does not rise to the level of persecution. *Susanto Appeal*, 1-2; App. 006-007. Susanto's mother had to claim that he was "illegitimate" so that he would have an ethnically Indonesian name and be eligible for an Indonesian passport. Transcript of Removal Hearing, at 54-55, *Matter of Susanto*, No. A95-368-427; App. 095-096 [hereinafter, "Transcript"]. As a school child, ethnic Indonesians called Susanto names, fought with him, and on one occasion, a group of eight schoolmates stole his watch and money. Transcript, at 29-30; App. 070-071. Susanto was beaten and suffered a fracture in the course of defending a Chinese girl from being molested by ethnic Indonesians. Transcript, at 31-36; App. 072-077. Ethnic Indonesians slashed Susanto's arm with a knife and took his motorbike; when the incident was reported, the police demanded an

4

administrative fee. Transcript, at 37-40; App. 078-081. During high school, Susanto and a friend fought with a pair of ethnic Indonesians; the next day, a large group of ethnic Indonesians came to the Catholic high school Susanto attended, threw stones, damaged school vehicles and property, and injured a number of Susanto's classmates. Transcript, at 42-44; App. 083-085. One Christmas eve, Muslims yelled and threw stones at Susanto's church, Transcript, at 44-46, 49; App. 085-087, 090. On several occasions, Susanto had to pay higher administrative fees for government services than ethnic Indonesian would have paid, and was subject to administrative fees of questionable validity when reporting crimes in hopes of police investigation. *E.g.*, Transcript, at 51, 56, 62-63; App. 092, 097, 103-104. During one such encounter, a police officer slapped Susanto. Transcript, at 70; App. 070.

"Persecution" under the immigration laws does not "encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional," *Fatin v.* INS, 12 F.3d 1233, 1240, 1240 n.10. Based upon our review of this record, we agree that the evidence does not compel a conclusion of past persecution. Most of the incidents do not entail "threats to life or freedom." *Fatin*, 12 F.3d at 1240. In the incidents arguably approaching this threshold – the slashing and the large group attack on Susanto's school – the actors were private. In the slashing incident, the Susanto testified that he could identify the attackers as "natives," but offered no indications of racial or religious motivation for the crime. Transcript, at 37-39; App. 079-080. In the case of the school

5

attacks, Susanto testified that police arrived within ten minutes, and their presence alone was sufficient to disperse the attackers. Transcript, at 43; App. 084. This is inconsistent with the governmental involvement or acquiescence that is required to establish persecution. Moreover, although the fees Susanto had to pay to the police were certainly appear unfair and unjust, he does not suggest that they caused severe economic hardship to him or his relatives, who were able to work and attend school in Indonesia. Transcript, at 72-73; App. 113-14. Rather, they appear not that different from bribes or "puts" that are common in developing countries. We note also that Susanto was able to become a star athlete in Indonesia and to travel to the United States for an athletic competition. App. 053, 428. For these reasons, we conclude that the BIA's determination that Susanto had not been persecuted is supported by substantial evidence. Accordingly, the burden of showing fear of future persecution remained with Susanto.

There is also substantial evidence to support the BIA's determination that a reasonable person in Susanto's circumstances would not harbor a well-founded fear of future persecution, either of individually or as part of a pattern and practice persecuting a racial, religious, nationality, or social group of which he is a member. *See* 8 C.F.R. § 1208.13(b)(iii). Susanto's family has continued to live, attend school, practice their religion, and work in Indonesia. Transcript, at 72-73; App. 113-14. No evidence suggests Susanto's family in Indonesia is being persecuted and Susanto has stated no reason why he would be treated more severely than his relatives who remained there.

6

Moreover, to the extent Susanto's evidence establishes a "pattern and practice" of mistreatment of Christians, Catholics, ethnic Chinese, and/or Chinese Christians, he has not been able to show that the persecution involved the government or that the government of Indonesia is unwilling or unable to control the activity. *See Abdurahman*, 330 F.3d at 592. In fact as noted earlier the police responded when called while he was being attacked at school and their presence appears to have been prompt and effective. Transcript at 43-44; App. 084-085 Moreover, the State Department reports in evidence when the BIA rendered its decision indicate that Catholicism is among the faiths officially recognized by the government, that ethnic Chinese "play[] a major role in the economy[,]" and that [i]nstances of discrimination and harassment of ethnic Chinese Indonesians declined compared with previous years." U.S. Dep't of State, Bureau of Democracy, Human Rights, and Labor, Country Reports on Human Rights Practices: Indonesia 14, 24; App. 296, 306 [hereinafter 2004 Country Report]. This clearly does not compel a conclusion that the BIA erred in finding that Susanto's fear of persecution was not well-founded.

Although asylum is within the discretion of the Attorney General, withholding of removal is mandatory if the alien proves that it is more likely than not that he will be persecuted. 28 U.S.C. 1231(b)(3)(A); *INS v. Stevic*, 467 U.S. 407, 429-30 (1984); Ghebrehiwot, 467 F.3d at 351. Since this is a higher burden than the well-founded fear

7

required for asylum, Susanto's failure to establish eligibility for asylum dooms his claim for withholding of removal. *Id*.

**B.**

As we pointed out in *Ghebrehiwot*, failure to show eligibility for asylum or entitlement to withholding of removal does not necessarily preclude protection under the CAT. *Id*. at 358; *Zubeda*, 333 F.3d at 476. In order to receive protection under the CAT, a removable alien must show that it is more likely than not that he/she will be tortured if removed. *Sevoian v. Ashcroft*, 290 F.3d 166, 174-175 (3d Cir. 2002). However, the alien need not establish any nexus between the torture and membership in a protected group or a protected status. He/she need only establish the probability of torture. *Ghebrehiwot*, 467 F.3d at 352 (citations omitted). The regulations implementing the CAT provide in relevant part:

> (1) Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.
> (2) Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture.

8 C.F.R. § 208.18(1)-(2).

8

The BIA's discussion of the CAT was exceedingly brief, but it was sufficient. Based on this record, the CAT claim appears little more than a "throw-in." Susanto's real claim is that he is a "refugee" entitled to withholding of removal or asylum. He does not really claim that his treatment would amount to torture if he returned, and the record would not support any such argument. Thus, the BIA correctly rejected it. *See Susanto Appeal*, at 2; App. 007 ("Specifically, we do not find sufficient evidence that it is more likely than not that [Susanto] would be tortured if returned to Indonesia.").

## C.

Susanto also argues that the BIA's reliance on our decision in *Lie v. Ashcroft*, 396 F.3d 530 (3d Cir. 2005), that was filed after the IJ's grant of asylum, was an *ex post facto* application of law thereby denying him the due process of law the Constitution guarantees. The argument is meritless. Adjudicators must apply court decisions in effect when a given case is decided. *See Harrison v. Ryan*, F.2d 84, 86 (3d Cir. 1990). Furthermore, *Lie* did nothing to change the definition of "persecution," "torture," or an alien's burden of proof. In addition, the BIA did not rely on *Lie* in finding Susanto's fear of persecution was not well-founded. *Susanto Appeal*, A95-368-427, at 2; App. 007. Rather, the Board simply concluded, based upon Susanto's testimony and the State Department's assessments of Indonesia, that Susanto's fear of persecution, while credible, was not well-founded. We agree. Accordingly, neither the BIA's use of the

9

phrase "in light of . . . *Lie*" nor its citation to *Lie* represent a violation of Susanto's due process rights. Thus, the BIA correctly sustained the appeal of the IJ's grant of relief.

## II.

We review the BIA's October 26, 2005 denial of Susanto's motion to reopen proceedings for abuse of discretion. *Denial of Motion to Reopen, Matter of Susanto*, A95--368-427 (BIA 2005) [hereinafter *Denial of Motion to Reopen*]. Our review is highly deferential and we will reverse the Board's decision only if "arbitrary, irrational, or contrary to law." *Sevoian*, 290 F.3d at 174; *see Lu v. Ashcroft*, 259 F.3d 127, 131 (3d Cir. 2001). As the BIA correctly noted, motions to reopen must state the new facts that will be proved and must make a prima facie showing that the alien is eligible for the relief sought. 8 C.F.R. § 1003.2(c)(1).

Susanto offered to prove that, as a result of being falsely accused of a sex offense and despite his eventual acquittal of the charges, his fear of persecution is now well-founded. App. 190-92. When the BIA reversed the grant of asylum and ordered Susanto removed, all information regarding his beating, arrest, initial conviction, June 2005 acquittal, and the media coverage of these events was available; it could have been argued, but was not. App. 147-50. Nevertheless, the BIA considered all evidence presented in denying Susanto's motion to reopen. It was within the discretion of the BIA to find the State Department Country Reports more persuasive than Susanto's fears of persecution and torture, the general information regarding the incidence of

10

disappearances and extrajudicial killings, and the affidavit of Susanto's expert stating Susanto faced a newly-heightened likelihood of persecution. *See Ambartsoumian v. Ashcroft*, 388 F.3d 85, 88 (3d Cir. 2004); *Xie v. Ashcroft*, 359 F.3d 239, 244 (3d Cir. 2004).

Moreover, Susanto has not offered any evidence of the existence of any social group comprised of persons accused of sex offenses in Indonesia. Accordingly, it was well within the BIA's discretion to consider the absence of any such evidence in the Country Reports in denying his petition to reopen. Although the BIA's discussion was exceedingly minimal, it was adequate. We can not fault the BIA for failing to discuss more thoroughly nonexistent evidence of a social group that may or may not exist.

Finally, unlike the decision we reviewed in *Ghebrehiwot*, the Board did not say that the alien's application for relief under CAT **necessarily** failed because he was ineligible for asylum, stating instead that Susanto had failed to establish a prima facie claim for relief. *Compare Ghebrehiwot*, 467 F.3d at 358, *with* Denial of Motion to Reopen, at 2; App. 003.

## V.

For the reasons above, we will deny Susanto's petition for review of the BIA's decision denying asylum, withholding of removal, and protection under the CAT and we will deny Susanto's petition for review of the BIA's denial of his petition to reopen removal proceedings.

11